JOHN A. MACDONALD, HIGHWAY COMMISSIONER
vs.
EDWIN R. HOLDEN

Superior Court          Litchfield County          File #8993

## MEMORANDUM FILED FEBRUARY 5, 1938.

Leo V. Gaffney, Assistant Attorney General, of Hartford, for the Plaintiff.

John H. Cassidy, of Waterbury, for the Defendant.

McEVOY, J. This is the third in a series of actions between these litigants.

The present defendant was the plaintiff in the first action and in the second action.

In each of the first and second actions the issues were found in favor of the then plaintiff and damages were awarded to the then plaintiff—the present defendant—against the then defendant—the present plaintiff.

Since the termination of the first and second actions the present plaintiff has expended a large sum of money in constructing a drain which it was then thought, by this plaintiff, would be ample to carry off the surface water in an easterly direction. The easterly drain does not carry off all of the surplus water. During an unusual rainstorm some of the surplus water spreads out over the land of the defendant and floods the defendant's land as well as the main highway which runs in an easterly and westerly direction south of the land of the defendant.

Upon the trial evidence was offered on behalf of the plaintiff tending to show that the flooding was caused by materials and silt deposited in the ditch which runs northerly across the land of the defendant. Upon the supposed completion

of the presentation of the evidence an investigation was made by the plaintiff and it disclosed that the 18-inch pipe installed by the plaintiff under the cement highway from south to north had become and was clogged and that it was almost entirely closed because cement blocks had become dislodged from their support in the tentative roof of the sluice and were wedged in the sluice. The inevitable result was to prevent a great bulk of the water which should have run through the sluice from finding its way through so that it backed toward its entry and flooded the road and then found its way across the cement roadway so that it spread out first, in part, over land westerly of and lower than the land of the defendant and then across the defendant's land. This situation demonstrated the inaccuracy of the claim that the flooding was caused by the defendant's conduct with reference to the ditch because the flooding water spread out not only over the surface of the ditch but also over the surface of the land westerly and easterly of it.

In this connection evidence was offered on behalf of the plaintiff tending to show that the original level of the ditch, which is upon the land of the defendant, was below the northerly end of the 18-inch sluice pipe which was installed from south to north under the highway by the plaintiff.

Evidence to the contrary was presented on behalf of the defendant. Upon this conflict of evidence, after a view of the premises made by the trial judge in company with and at the request of both counsel of record, it is found that the original base or level of the ditch was the same as its present level—or substantially the same—because, due to the intermittent rush of water occasioned by unusual rain various materials are carried through and on to the bed of this ditch and some of this remained there.

It is also found that the plaintiff installed the 18-inch cement sluice pipe in such manner that the top of its north end was below the then existing level of the bed of the ditch or brook.

Obviously the natural result of the contact of the onrushing water from the south to the north as it exuded near the water sluice would be to alter the level or depth of the ditch or brook.

This action would, naturally, tend to create "berm" or deposit of silt or other material, upon the creation and exist-

ence of which the plaintiff seemed to place great reliance in this trial.

On the defendant's motion further evidence was presented. From this evidence it appeared that the flooding was caused by the neglect of the plaintiff and that the defendant was without fault in this respect and it was stated by the plaintiff's counsel that "it is obvious that was neglect on the part of the highway department for not having discovered that condition." Plaintiff's counsel of record then offered to withdraw the action and to pay to the defendant a reasonable sum to cover the expense to which the defendant had been put by reason of the institution of this action. The defendant then, by permission of the court, filed an amended counterclaim which not only alleged items of consequential damage but also in its paragraphs 20, 21 and 22 set out allegations of vexatious suit.

As a basis for recovery under the claimed vexatious suit the defendant offered evidence that a representative of the plaintiff had stated that the present action was instituted by this plaintiff against the defendant substantially as a reprisal against the defendant because this defendant had previously instituted and prevailed in the first and second actions against the then defendant—the present plaintiff.

The only evidence in the record as to the vexatious character of the suit is found in the statement which the plaintiff's representative did make during the present proceedings and after the main part of the evidence had been presented. Viewed in its aspect most favorable to the defendant, this statement is, at best, an opinion expressed upon his own initiative and responsibility by the representative of the plaintiff. It does not appear that the representative was either impliedly or expressly authorized by the plaintiff to make the statement, nor does it appear that the plaintiff had any knowledge of the intention of the representative to make it. It does not appear that the plaintiff entertained such alleged intention before the institution of this action nor that he now entertains it. Under these circumstances there may be no recovery by the defendant against the plaintiff upon the theory of vexatious suit.

In his complaint as amended the plaintiff pleaded inconsistently, as he had a right to do, that the defendant had caused the alleged damage to the plaintiff by digging ditches and by

not digging ditches.

Neither allegation is found to be proven. The truth is that the defendant has made every reasonable effort to clean the ditch and to keep it clean. In addition, prior to the institution of this action, the defendant offered to permit the plaintiff to go upon his land to make an improvement by installing a pipe of at least 30 inches in diameter northerly along the line of the present ditch. In response to this suggestion the plaintiff then proposed to the defendant that the plaintiff be permitted to increase the width of the ditch from its present width to a width of about nine feet but with a very shallow and outwardly expanding base. The net result of this plan would have been to accumulate sewage and fetid matter in the ditch in times of flood which would have engendered an accumulation of filth with the resulting odors in dry weather. This would have resulted in a situation definitely detrimental and injurious to the defendant and to his property. As a counter offer the defendant reasonably proposed that the plaintiff install a pipe of at least 30 inches in diameter at a lower depth than the present ditch or drain with a northerly decline in its level. This would give reasonable assurance of proper drainage of the accumulated water from the land southerly of the highway and from the highway itself—assuming that the sluiceway under the highway would be properly kept open by the plaintiff and not neglected as it formerly had been.

Upon a view of the premises made by the trial judge at the request of both parties and in their company, and after a careful consideration of all of the evidence, arguments and briefs, it would seem that the carrying out of the proposed plan would solve the difficulty, prevent further damage to the highway and to the defendant's property and—equally important—that it might tend to end this protracted litigation. "Interest reipublicae ut sit finis litium."

It would seem reasonable to believe that a pipe of sufficient proportions, laid with a proper degree of declination, into a receptive outlet northerly along the land of the defendant and on the site of the existing ditch would relieve the highway from floods, carry off the surplus water so that it would not flood the highway and, at the same time, reasonably prevent further damage to the property of the defendant from stagnant water, sewage and the resulting odors.

Last, but not least, it might and possibly would bring peace to these litigants and to their neighbors.

The issues are found in favor of the defendant upon the plaintiff's complaint, as amended, and upon the defendant's counterclaim—except as to paragraphs 20, 21, 22 of the counterclaim.

Upon the original counterclaim as thus limited judgment may be entered in favor of the defendant to recover of the plaintiff $750.00 damages and his costs.