ELIZABETH M. BAKER & others, trustees, *vs.* DHARAM D.
MONGA.

No. 90-P-1358.

Essex. February 19, 1992. - April 27, 1992.

Present: BROWN, KASS, & IRELAND, JJ.

*Practice, Civil,* Summary judgment. *Condominiums,* Common expenses.
*Lien.*

In an action by trustees of a condominium association to enforce a lien for
   unpaid condominium common expenses, summary judgment was prop-
   erly entered against the defendant unit owner, where the plaintiffs es-
   tablished that he had failed to pay the amounts assessed and that they
   were due and owing. [452-454]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 26, 1990.

The case was heard by *J. Harold Flannery,* J., on a mo-
tion for summary judgment.

The case was submitted on briefs.

*Dharam D. Monga,* pro se.

*Scott M. Grover, Joseph R. Valle, Jr., & Isaac H. Peres*
for the plaintiffs.

BROWN, J. This is an action under G. L. c. 254, §§ 5 and
5A, to enforce a lien under G. L. c. 183A, § 6(*c*), for unpaid
condominium common expenses.[1] Under a declaration of
trust dated April 22, 1971, and recorded in the registry of
deeds, the plaintiffs (the "trustees") are the duly elected gov-
ernors of the Glover Landing Condominium Trust (the

---

[1]General Laws c. 183, § 6(*c*), as amended through St. 1987, c. 338,
§ 1, and as in effect prior to St. 1991, c. 554, § 1, provides in part: "The
unit owner's share of the common expenses shall constitute a lien upon his
unit and shall be enforced in the manner provided in section[s] five and
five A of chapter two hundred and fifty-four." See note 7, *infra.*

"trust"), an organization of unit owners of the Glover Landing Condominium,[2] located in Marblehead and established by a master deed recorded in the registry of deeds. The defendant, an attorney, is the owner of unit 36 of the condominium (the "unit"). The defendant was assessed common expenses of $294 per month for the months September, 1989, through June, 1990, on his unit but did not pay those assessments to the trustees.[3] Under a provision of the trust documents, the trustees imposed interest of 1.5% per month and late charges of twenty-five dollars per month upon the unpaid common expenses.

The trustees commenced this action in the Superior Court by complaint filed on March 26, 1990, seeking to establish a lien on the unit and to obtain an order authorizing the sale of the unit under G. L. c. 254, § 5A, to satisfy the lien. The defendant filed counterclaims against the trustees, individually and as trustees, and their attorneys. The counterclaims (as amended) sought recovery for breach of contract, breach of fiduciary duty, unfair trade practices in violation of G. L. c. 93A, damages under G. L. c. 231, § 6F, and abuse of process.

On July 11, 1990, the trustees and their attorneys named in the counterclaim served on the defendant (and filed in court on August 7, 1990) a motion to dismiss certain of the defendant's counterclaims and a motion for summary judgment, supported by condominium documents and by memorandum and affidavits of their counsel and property manager regarding the calculation of· damages, costs and attorneys' fees. By motion dated July 24, 1990, filed on August 7, 1990, without support of an affidavit under Mass.R.Civ.P. 56(f), 365 Mass. 825 (1974), the defendant sought additional time to file oppositions to the motions for summary judgment and to dismiss the counterclaims. By order dated August 9, 1990,

---

[2]As to the capacity of an unincorporated association to sue or be sued, see G. L. c. 183A, § 10(*b*)(4), which creates an exception for condominium associations.

[3]The defendant asserted in his answer that he had established an escrow account in the name of the trust, for the purpose of depositing the "unlawfully assessed" amounts.

a Superior Court judge denied the defendant's motion and directed him to file his opposition by August 17, 1990.[4] After a hearing on September 4, 1990, the same Superior Court judge allowed the trustees' motions, as well as a motion for final judgment. Judgment was entered (1) declaring that the total sum due and owing the trust was $8,233.62, which amount constitutes a debt for which the defendant is personally liable under G. L. c. 183A, § 6(*b*); (2) establishing a lien in that amount; and (3) authorizing sale of the unit to satisfy the lien. All of the counterclaims were dismissed. The defendant timely appealed.

By affidavit, the trustees established (because the matter was essentially unrebutted) that as of July 10, 1990, there remained due and owing from the defendant $2,940 in monthly common expenses, $250 in late charges, and interest of $274.92, for a total amount due of $3,464.92, and that the trustees had incurred legal fees and expenses of collection totalling $4,768.70. The master deed, declaration of trust and by-laws submitted by the trustees established that unit owners shall be liable for common expenses in accordance with G. L. c. 183A. The defendant filed no materials countering these statements. See note 4, *supra*; Mass.R.Civ.P. 56(c) and

---

[4]The defendant claims on appeal that he received the judge's order less than one day before he was to comply, but it is significant that he had been served with the complaint in May, 1990, and with the trustees' motions and supporting materials in July, 1990. Moreover, the defendant asserts that he timely filed oppositions to the motions, although such do not appear on the docket. The chief bases of the defendant's oppositions, as they appear in the record appendix, are that the trustees commenced their suit in retaliation for the defendant's pending civil rights action against them in Federal District Court; that the defendant's deposit in escrow of the disputed charges was lawful and reasonable, and that the trustees (and their attorneys) acted unreasonably, in bad faith and maliciously in seeking to force the sale of the defendant's property to satisfy a small debt. The defendant's oppositions refer to, but do not include, affidavits of the defendant and, presumably, his wife. The materials submitted by the defendant put forth no evidence to support his argument that the common expenses assessed to him were "unlawfully assessed" or were in consideration of the trust's provision of certain "services and privileges."

(f), 365 Mass. 824-825 (1974).[5] The plaintiffs having established that the defendant had failed to pay the amounts assessed and that they were due and owing under G. L. c. 183A, § 6(*b*) and (*c*), see *Tosney* v. *Chelmsford Village Condominium Assn.*, 397 Mass. 683, 686-687 (1986); *Glickman* v. *Brown*, 21 Mass. App. Ct. 229, 237 (1985), the defendant could not "rest upon the mere allegations or denials of his pleading" but pursuant to Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974), was required to respond "by affidavits or as otherwise provided by [the] rule . . . [and] set forth specific facts showing that there is a genuine issue for trial." Because the defendant failed so to do, summary judgment on the trustees' complaint was properly entered. See *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 554 (1976); *Correllas* v. *Viveiros*, 410 Mass. 314, 317 (1991). To the extent that the defendant continues to assert that he needed additional time to respond to the motion for summary judgment, his failure to file an affidavit pursuant to rule 56(f), setting forth his reasons is fatal. *First Nat'l Bank* v. *Slade*, 379 Mass. 243, 244-245 (1979).

The defendant's assertion that "[t]here is no good ground to support the sale of . . . [his] $350,000 marital home to satisfy a claim for $2,330.46 which sum [he alleges] has been placed in an escrow account" is incorrect.[6] The trustees' action is authorized by statute upon nonpayment of common expenses.[7] Absent an adjudication by a court of competent jurisdiction that the condominium association's adoption of its budget or imposition of its assessment was accomplished in bad faith or in excess of its authority, condominium

---

[5]The affidavit included in the record appendix dated February 2, 1990 (an evident typographical error), discussing what occurred before the motion judge in September, 1990, is not part of the record before the motion judge.

[6]We express no opinion whether the defendant at this stage may still have the opportunity to discharge his indebtedness. See G. L. c. 254, § 20.

[7]General Laws c. 254, § 5A, as inserted by St. 1987, c. 338, § 3, provides in part: "When the amount of a lien under section six of chapter one hundred and eighty-three A has been established by a court, the court shall enter an order authorizing the sale of the real estate to satisfy such lien." See also G. L. c. 254, § 5.

charges by the unit owners' organization are not subject to set-off or some other form of self-help remedy.[8] See, e.g., *Rivers Edge Condominium Assn.* v. *Rere, Inc.,* 390 Pa. Super. 196, 199 (1990). See and compare *Dockside Assn.* v. *Detyens,* 352 S.E.2d 714 (S.C. Ct. App.), aff'd, 362 S.E.2d 874 (S.C. 1987); *Newport W. Condominium Assoc.* v. *Veniar,* 350 N.W.2d 818, 821-822 (Mich. Ct. App. 1984).

In view of the legitimacy of the charges and the lien as established and the absence of any minimal factual predicate on this record to support the defendant's claims, particularly the abuse of process claim alleged solely "upon information and belief," see *P & F Constr. Corp.* v. *Friend Lumber Corp.,* 31 Mass. App. Ct. 57, 58-59 (1991), the judge did not err in dismissing all of the counterclaims. See *Gennari* v. *Revere,* 23 Mass. App. Ct. 979, 979-980 (1987). See also *Tosney* v. *Chelmsford Village Condominium Assn.,* 397 Mass. at 686; *Kourouvacilis* v. *General Motors Corp.,* 410 Mass. 706, 711-716 (1991).

*Judgment affirmed.*

---

[8]The notion that a unit owner may in some circumstances be able to show "bad faith" should give no comfort to the litigious (or even the unduly contentious) because a unit owner's complaints should in most cases be the subject of a separate claim. The defendant's pending civil rights action in Federal court, with which he alleged he sought to consolidate the present action, would not operate to excuse payment of common charges in this case. The independent nature of the covenant to pay in timely fashion common charges to the condominium unit owners' organization is implicit in the contractual agreement of the association's members that maintenance charges and other proper assessments are necessary to the sound ongoing financial management and stability of the entire complex.