[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE PLAINTIFF'S MOTION TO STRIKE AMENDED SPECIALDEFENSES, SET-OFF AND COUNTERCLAIMS DATED JANUARY 11, 1995
CT Page 1930
This is an action to foreclose a statutory lien for delinquent common expense assessments due the plaintiff condominium association pursuant to § 47-258 of the Common Interest Ownership Act. General Statutes §§ 47-200
through 47-281. The plaintiff has moved to strike the second through sixth special defenses, a claimed set-off asserted by the defendant, and all four counts of the defendant's amended counterclaim dated January 11, 1995.
 I
The second special defense asserted by the defendant is that the "amount of attorney's fees charged and claimed is excessive or otherwise incorrect."
Under General Statutes § 47-258 (j) an association's lien may be foreclosed in the same manner as a mortgage on real property, and under subsection (g) a judgment in an action brought under the statute "shall include costs and reasonable attorney's fees for the prevailing party." Attorney's fees in foreclosure actions are within the equitable discretion of the court and are subject to the control of the court, which may reduce the amount sua sponte at its discretion, or after hearing, if their validity or reasonableness are contested by an adverse party. 55 Am.Jur.2d, Mortgages § 708.
Accordingly, the motion to strike the second special defense is granted.
 II
The third special defense states that the plaintiff "has failed to provide for the proper maintenance, repair and replacement of common elements" pursuant to § 47-249 of the General Statutes.
The defendant states that this defense is not based on §47-78 (a) of the General Statutes which provides that a unit owner may not exempt himself from liability for payment of the common expenses by waiving his right to the use or enjoyment of the common elements. The defendant claims instead that it is asserting a defense of failure of consideration because the defendant has "received insufficient consideration in return for CT Page 1931 the common fees charges [because of] failure of the association to provide reasonable and necessary common services."
A common interest community such as a condominium is defined in § 47-202 (7) of the General Statutes as "real property described in a declaration with respect to which a person, by virtue of his ownership of a unit, is obligated to pay for (A) real property taxes on, (B) insurance premiums on, (C) maintenance of, or (D) improvement of, any other real property other than that unit described in the declaration." Section 47-78
(a) provides that an owner may not exempt himself from liability for payment of common expenses even by such extreme measures as giving up the use and enjoyment of the common elements or by abandoning the unit entirely.
A Georgia appellate court has held that under a similarly worded statute "[t]here is no legal justification for a condominium owner to fail to pay valid condominium assessments [and that the statutory language] reflects a clear choice by the legislature that the owner's obligation to pay assessments be absolute, and a condominium unit owner involved in a dispute with the condominium association about its services and operations may not exert leverage in that controversy by withholding payment" although he may seek other remedies by way of an independent action. Forest Villas Condominium Assn. Inc. v. Camerio,422 S.E.2d 884, 886 (Ga.App. 1992). The court also stated that the obligation to pay the assessments must necessarily be independent of the continuing obligations of the association to provide services to all owners and that the statute expresses a public policy that the discharge of its duties and the performance of its functions to the condominium community as a whole not be jeopardized or compromised by individual disputes which may or may not be meritorious. Id.
Most of the reported cases throughout the country dealing with this issue support the proposition that a unit owner may not properly withhold payment of lawfully assessed common charges, and the rationale for the prevailing view as expressed by the Supreme Judicial Court of Massachusetts, in Trustees of PrinceCondominium Trust v. Prosser, 592 N.E.2d 1301 (Mass. 1992), is that any grievance that a unit owner may have against the condominium association, even a seemingly meritorious one, should not be permitted to affect the collection of such charges so as to threaten the financial integrity of the entire condominium community. Id. 1302. A condominium unit owner may not decline to CT Page 1932 pay lawful assessments "[f]or the same reason that taxpayers may not lawfully decline to pay lawfully assessed taxes because of some grievance or claim against the taxing governmental unit", and if there were to be any exceptions made to this principle, they should only be made upon a showing of extraordinary circumstances. Id.
For the purpose of ruling on the plaintiff's motion to strike the third special defense, the court will treat it as purporting to allege a failure of consideration as suggested by the defendant. This court has recently held that such a defense is legally insufficient, based on its review of Connecticut case law, on both substantive and procedural grounds. Watch HillCondominium, Inc. v. Van Eck, 17 Conn. L. Rptr. No. 6, 198 (June 14, 1996) (Barnett, J.).
The court held that a condominium association's failure to provide maintenance services to a unit owner is not a valid defense to an action to foreclose a lien for common charges based on § 47-78 and § 47-258 of the General Statutes. Id. 203. The procedural ground relied upon by Judge Barnett in his decision was that the applicable statutes precluded such special defenses and counterclaims because they do not satisfy the "same transaction" requirement set forth for counterclaims in Practice Book § 116 and intimated for special defenses in § 133 of the Practice Book. Id.
Most of the Connecticut trial court decisions have consistently followed the view that actions to foreclose a common charge lien, special defenses or counterclaims should not be recognized as a matter of law, because the special defenses were not based on the lien which was the subject of the foreclosure, and because the counterclaims did not arise out of the same cause of action asserted by the plaintiff. Village at Paugnut ForestAssn., Inc. v. Wood, 14 Conn. L. Rptr. No. 8, 242 (May 19, 1995) (Pickett, J.).
For the foregoing reasons, the plaintiff's motion to strike the third special defense is granted.
 III
The fourth special defense alleges that interest in the form of "attorney's fees, costs, assessments, and other fees and charges that are excessive or otherwise improper", as well as CT Page 1933 "illegal late fees" constitute illegal interest under the statutes governing usurious loans, including Sections 37-1, 37-3a
and 37-4 of the General Statutes.
In order to constitute usury there must be a loan of money, or a forbearance of an existing indebtedness, and if no such loan or forbearance is shown, there is nothing upon which to predicate a charge of usury. 45 Am.Jur.2d, Interest and Usury § 117. Under Connecticut case law, in order to make such a claim, there must be a loan, directly or indirectly, and a real sale without any intent to make a loan cannot be usurious. Lloyd v. Keach,2 Conn. 175 (1817).
A loan is a contract where one party transfers to the other a sum of money which the other agrees to pay absolutely together with such additional sums as may be agreed upon for its use.Bridgeport L.A.W. Corp. v. Levy, 110 Conn. 255, 260 (1929). The furnishing of merchandise or services as such without any intent to extract usurious interest does not ordinarily implicate the usury laws. See Finance Discount Corp. v. Hurwitz, 138 Conn. 636,639 (1952).
The courts of this state "have never expanded the usury statute to include any transaction which was not a loan of money, [and the] fact that the Connecticut statute provides a particularly severe penalty . . . is an additional reason for not reading the usury statute more broadly than it is written."Scientific Products v. Cyto Medical Laboratory, Inc., 457 F. Sup. 1373,1377-78 (D. Conn. 1978). It should also be noted that a Texas appellate court has held that under that state's usury law, a late payment penalty charge imposed by a condominium association was neither a loan, a forbearance, or a detention of money, and that because there was no "lending relationship" as contemplated by the statute, the court concluded that the late charge did not fall within any of the statutory definitions of interest, and was therefore not interest as a matter of law.Tygrett v. University Gardens Homeowners' Assn., 687 S.W.2d 481,485 (Tex.App. 1985).
The court finds, therefore, that the assessments which are the subject of this action and the various fees and charges claimed to be excessive in connection with their collection are not subject to the provisions of this state's usury laws.
Accordingly, the plaintiff's motion to strike the fourth CT Page 1934 special defense is granted.
 IV
The fifth special defense alleges that the plaintiff failed to perfect its lien because it did not comply with the provisions of § 47-77 (a) of the Condominium Act in that it failed to file a notice of lien and to serve a copy of the notice on the defendant unit owner. The defendant claims that because the Mountain View Condominium was created under the Condominium Act of 1976 prior to January 1, 1984, and the provisions of the Common Interest Ownership Act (CIOA) are expressly made applicable under § 47-214 to common interest communities created after that date, the inchoate lien provided for in § 47-258 is not available to the plaintiff and the lien must be perfected pursuant to the pre-existing provision of the Condominium Act, § 47-77
(a) of the General Statutes.
The CIOA significantly altered almost every aspect of condominium liens, in that it not only changed their scope and priority, but their manner of perfection as well, and because § 47-216 expressly makes § 47-258, the lien provision of CIOA, applicable to all previously created common interest communities, and even though the lien provision of the old Act, § 47-77, has not been repealed, "it almost certainly has been superseded and its lien provisions rendered nugatory by section 47-258." D. Caron, Connecticut Foreclosures, and Attorney'sManual of Practice and Procedure, § 12.02 (2d ed. 1989). Section 47-258 creates a lien upon a unit for unpaid fees even though the condominium was created prior to 1984. Hayes HouseCondominium v. Galvez, 6 CSCR 68 (January 8, 1991) (Katz, J.).
Section 47-216 of the CIOA enumerates those provisions of the Act, including § 47-258, that "apply to all common interest communities created in this state before January 1, 1984; but those sections apply only with respect to events and circumstances occurring after January 1, 1984", and do not invalidate existing provisions of the declaration or bylaws. Section 47-202 is also one of the provisions that applies retroactively "to the extent necessary in construing any of those sections", and therefore, the obligation to pay maintenance charges attaches by virtue of the ownership of a unit under subsection (7) of the definition section of the CIOA for the purpose of construing the assessment lien provisions of §47-258 of the Act. CT Page 1935
Paragraph 2 of the complaint, which is admitted in the defendant's answer, states that Rumford Associates IV purchased Unit B-2 on October 31, 1986, at which time its statutory obligation to pay the statutory charges accrued as well as its potential exposure to the enforcement of the statutory lien under § 47-258. It appears, therefore, to be undisputed that the delinquency in payment which is the subject matter of this action were "events and circumstances occurring after January 1, 1984" within the meaning of § 47-216.
Under the facts of this case, therefore, the defense asserted in this count is legally insufficient, and accordingly, the plaintiff's motion to strike the fifth special defense is granted.
 V
The sixth special defense states that the plaintiff "has unclean hands and is estopped from foreclosure, because of acceptance of benefits due to actual or constructive fraudulent conduct and the conduct alleged in the prior five Special Defenses."
The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy that is the subject matter of the action. Collens v.New Canaan Water Co., 155 Conn. 477, 492 (1967). "Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." Bauer v. Waste Management ofConnecticut, Inc., 239 Conn. 515 at 525 (1996).
The party who seeks to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. DeCecco v.Beach, 174 Conn. 29, 35 (1977). The trial court has broad discretion in determining whether the promotion of public policy dictates that the clean hands doctrine be invoked. Polverari v.Peatt, 29 Conn. App. 191, 202 (1992).
It should not be invoked if the consequence of its application would be to produce a result contrary to statute or public policy or when the result complained of is induced by CT Page 1936 one's own conduct. 27A Am.Jur.2d, Equity §§ 127, 130. Moreover, it should not be applied to acts which are collateral to the plaintiff's cause of action, and the wrong complained of must have an immediate and necessary relation to the equity which the plaintiff seeks to enforce, and must at least affect the equitable relations between the parties as to something brought before the court for adjudication. Id. § 133.
In order to avail himself of the defense of "unclean hands", the alleged misconduct must be directly related to the merits of the controversy between the parties and the defense applies only with respect to the right that is being sued upon rather then misconduct in the abstract unrelated to the claim to which it is asserted as a defense. Chauvin International Ltd. v.Goldwitz, 927 F. Sup. 40, 48 (D. Conn. 1996). The court's prior rulings with respect to the other defenses, and in particular, its adoption of the rule consistently followed by our trial courts that in actions such as this one, special defenses should not be recognized as a matter of law because they are not based on the lien which is the subject of the foreclosure action before the court, make the defense of unclean hands particularly inapplicable.
For the foregoing reasons, the plaintiff's motion to strike the defendant's sixth defense is granted.
 VI
The defendant pleads by way of set off that the plaintiff"overcharged interest and/or imposed illegal interest, attorney's fees, and other fees and costs, and failed to issue credits for overpaid common charges", and that therefore, the defendant "is entitled to a set off against any amount recovered against it."
Condominium charges are not subject to set off or some other form of self-help remedy in the absence of a court adjudication that the association's adoption of its budget or the imposition of its assessment on the unit owner was accomplished in bad faith or in excess of its authority. Baker v. Monga, 590 N.E.2d 1162,1164 (Mass.App. 1992). There is no right to a set off against a lawfully imposed condominium charge and "[s]uch authority as there is elsewhere in this country also supports the proposition that a condominium unit owner may not properly withhold payment of lawfully assessed common area charges by asserting a right of CT Page 1937 offset against those charges." Trustees of Prince CondominiumTrust v. Prosser, supra, 592 N.E.2d 1302; see also Park PlaceEstates Homeowner's Assn., Inc. v. Naber, 35 Cal. Rptr 51, 54
(Cal.App. 1994).
Damages should not be awarded in favor of unit owners by way of a set off in an association s action to recover common charges because if a set off were allowed "the result would be financial punishment against those innocent unit owners who made timely payments of their common charges." Breakwater Key Assn., Inc. v.Monaco, 16 Conn. L. Rptr, No. 9, 282, 283 (March 7, 1996) (Tobin, J.). The prevailing view followed by courts of other states, namely, that there is no right to a set off against lawfully imposed condominium charges has been adopted m a number of trial court decisions. See, e.g., Watch Hill Condominium. Inc. v. VanEck, supra, 203.
Accordingly, the plaintiff's motion to strike the defendant's claim of set off is grated.
 VII
The first and second counts of the defendant's counterclaim consist of a potpourri of claims which generally raise the same issue as those asserted in the special defenses, and to the extent that they may not be repetitive, they clearly do not comply with § 108 of the Practice Book, in that they do not disclose the ground of the defendant's claim or "define the issues in dispute", as required by that rule. In any event, whatever grievances the defendant wishes to pursue against the board, "it must be done in a separate action, not by refusal to pay their common charges which is directed against the other unit owners' health and welfare, all of whom are entitled to having the budget funded by all the unit owners. Anchorage Condominium
v. Smith, 1 CSCR 841 at 843 (October 16, 1986) (Harrigan, J.).
The plaintiff's motion to strike the first and second counts of the counterclaim is granted.
 VIII
The third count of the counterclaim incorporates the claim made in the second count that the lien was not properly perfected, an issue raised in the fifth special defense upon which the court has already ruled. It purports to allege an abuse CT Page 1938 of process, which has been held to be "an improper matter for adjudication in a foreclosure action because the "counterclaim sounds in tort and its subject matter has no connection with the making, validity or enforcement of the mortgage." ConnecticutSavings Bank v. Reilly, 12 Conn. Sup. 328 (1944)
The plaintiff's motion to strike the third count of the counterclaim is granted.
 IX
The fourth count of the defendant's counterclaim realleges the facts stated in the special defenses and asserts a CUTPA claim.
In Anchorage Condominium v. Smith, supra, the defendants' special defenses, one of which was a claim of unfair trade practices under the statute, were all addressed to the manner in which the condominium was being managed, including the failure to provide essential services, and their dissatisfaction was expressed by their withholding payments of the common charges. Id. 842. The court held that the unit owners' counterclaims did not arise out of the same transaction and had nothing to do with the enforcement of the lien. Id.
Where a counterclaim is filed in an action to foreclose common expense assessments which merely realleges the facts contained in the special defenses and asserts a CUTPA claim based on the failure to provide adequate services and maintenance, the defendant's counterclaim fails and the plaintiff's motion to strike the counterclaim must be granted. Wilton Crest Condominium
v. Stein, 9 Conn. L. Rptr. No. 17, 539 (August 13, 1993) (Leheny, J.). Such allegations simply do not arise out of the same transactions as the foreclosure action but rather from acts of the condominium association which are unrelated to the association's rights to collect common charges and to foreclose upon charges not paid by individual owners under § 47-244 and § 47-258 of the General Statutes. Id. 541.
The plaintiff's motion to strike the fourth count of the defendant's counterclaim is granted.
Harry Hammer Judge Trial Referee CT Page 1939