Hinkle, J.
This matter is before the Court on defendants’ renewed motion for summary judgment. In the underlying action, plaintiff New Hampshire Insurance Co., Inc. (“New Hampshire”)[2] brought suit against defendants for breach of contract and legal malpractice. In a decision of March 10, 1999, the Supreme Judicial Court vacated an earlier order of this Court denying defendants’ initial summary judgment motion in this legal malpractice case and remanded the case to this Court, directing that defendants be permitted to renew their motion. For the reasons stated below, after hearing, the renewed motion is ALLOWED.
*301 BACKGROUND
This case arises out of legal representation provided New Hampshire by defendants. New Hampshire retained defendants in 1978 as counsel in connection with a lead paint poisoning claim brought by Thomas Langlois on behalf of his minor son, William Langlois, against New Hampshire’s insureds, Norman Cranton and Hartley Cranton as trustees of the Haverhill Realty Trust (the “1978 Action”). The Crantons owned and managed the property where William Langlois was allegedly exposed to lead paint in the late 1970s.
The case of Langlois v. Cranton, Civil Action No. 13315 (Essex Superior Court), on remand, Civil Action No. 781161 (Central District Court of Northern Essex), settled in April 1981 for $3,000, which New Hampshire paid to Langlois on behalf of the Crantons. As part of the settlement, Thomas Langlois signed a Parents Release and Indemnity Agreement (the “Release”) on behalf of William Langlois. The Release discharged the Crantons “as Trustees of Haverhill Realty Trust, their heirs, successors and assigns of and from any and all actions, causes of action, claims, demands, damages, costs, loss of services, expenses and compensation, on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage which we may now or hereafter have as the parents and/or guardian of [William], and also all claims or rights of action for damages which the said minor has or may hereafter have.” The Release did not specifically release the Crantons in their individual capacities.
Eleven years later, in 1992, through his mother, Deborah Langlois, William Langlois brought a second action against Norman Cranton, Hartley Cranton and G. Hartley Cranton, individually and as trustees of the Haverhill Realty Trust in the Northeast Division of the Housing Court Department (Langlois v. Cranton, Civil No. 92-CV-00090) (the “1992 Action”). In this action, Langlois sought damages for the same lead paint poisoning that formed the basis of the 1978 Action. Langlois sought to hold the Crantons personally liable on the ground that the Release in the 1978 Action did not expressly mention individual liability.
The Crantons again looked to New Hampshire for their defense, and New Hampshire retained attorney Joseph Bertrand to defend them under the policy. Based on the facts that the same claim was settled and the Release executed in the 1978 Action, Attorney Bertrand sought summary judgment. After denial of this motion by the Housing Court (Kerman, J.), New Hampshire elected to settle the 1992 Action and paid Langlois $220,000. As part of this settlement, New Hampshire also assigned William Langlois the right to bring a claim against attorneys H. Burton Hampton, John W. McCann and/or the law firm of Madan & Madan for their actions or failures to act on behalf of New Hampshire and/or the Crantons in the 1978 Action.[3]
In 1995, on the basis of the assignment from New Hampshire, William Langlois filed a third lawsuit, this action against Madan & Madan, seeking to recover $220,000 plus litigation costs of the 1992 Action. Plaintiff contends that the Release executed in the 1978 Action covered the Crantons only in their capacity as trustees, not individually, and that defendants committed malpractice in failing to demand and obtain a broader release, thereby permitting Langlois to reassert his claims in the 1992 Action.
On June 4, 1997, defendants filed their initial motion for summary judgment. Defendants argued, first, that New Hampshire’s purported assignment to William Langlois, a litigation adversary, of its malpractice rights against its own former attorneys was void as against public policy. Second, defendants argued that they could not be liable for malpractice because the Release executed in the 1978 Action was valid and adequate as a matter of law and, therefore, they owed New Hampshire no duty to have obtained additional release language. Finally, defendants argued that the absence of additional language did not cause New Hampshire’s alleged losses in the 1992 Action.
After hearing, this Court (Welch, J.) denied defendants’ motion, noting that since the issue of assignment of a legal malpractice claim had not then been addressed by Massachusetts appellate courts, the assignment was not void as a matter of law.
Defendants sought interlocutory relief with the Appeals Court, which granted their petition in May 1998. On September 22, 1998, the Supreme Judicial Court allowed a joint application for direct appellate review. In its decision of March 10, 1999, the Supreme Judicial Court concluded that New Hampshire’s assignment of its malpractice rights to Langlois was enforceable. See New Hampshire Ins. Co. v. Madan & Madan, 429 Mass. 202, 206-12 (1999). In addition, the Supreme Judicial Court found “some logical force”.in defendants’ argument that the release was effective as drafted to bar any further claims against the Crantons, and defendants’ contention that Massachusetts lead paint law does not permit duplicative recovery against the same persons based upon their allegedly having performed acts in different “capacities.” Id. at 213. On that basis, the Supreme Judicial Court vacated Judge Welch’s order denying defendants’ motion for summary judgment and stated that “defendants should be permitted to renew their motion for summary judgment.” Id. at 214.
Defendants, through their renewed motion, contend that summary judgment is warranted since the Release executed in connection with the 1978 Action was legally sufficient to protect the Crantons and New Hampshire from further liability. Thus, they argue that defendants did not commit legal malpractice and therefore their conduct was not the proximate cause of any harm to New Hampshire.

*302
DISCUSSION

This court grants summary judgment where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Cassesso v. Comm.’r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and entitlement to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). With respect to any claim on which the party moving for summary judgment does not have the burden of proof at trial, it may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Comm. Corp., 410 Mass. 805, 809 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a material fact in order to defeat the motion.” Pederson v. Time, 404 Mass. at 17.
The Lead Paint Statute, G.L.c. 111, §§190-199 (the “Statute”), first enacted by the Legislature in 1971, “requires the owner of residential property to take affirmative measures to eliminate any sources of lead paint poisoning in any residential premises where a child under six is either residing or will reside due to a change in occupancy of those premises.” Comm. v. Racine, 372 Mass. 631, 632-33 (1977). The Statute imposes strict liability upon the “owner” for damages caused by poisoning from lead paint. See G.L.c. Ill, §199.
Throughout the Statute, the term used to identify the person(s) on whom these obligations and potential liabilities are imposed is “owner.” See e.g., G.L.c. Ill, § 199(a), 194, 196(a), 197. Before 1993. the Statute did not expressly define the term “owner.” The term “owner” is now, however, specifically defined to include trustees, grantors, and beneficiaries of trusts. See G.L. c. Ill, §189A, inserted by St. 1993, c. 482, §3. Nevertheless, regulations promulgated pursuant to the Statute, applicable at the time the 1978 Action was filed, specifically provided that a trustee would be individually liable as an “owner” under G.L.c. Ill, §199. See 105 C.M.R. §460.020 (1978).
The premise of plaintiffs malpractice claim against defendants is that defendants owed their client, New Hampshire, a duty to insist upon additional language in the Release expressly identifying the Crantons not only as “trustees” of the Haverhill Realty Trust but also as “individuals,” and that the absence of this language was a proximate cause of the losses incurred by New Hampshire in defending the Crantons in the 1992 Action and agreeing to a settlement of $220,000.
In support of this contention, plaintiff relies on Cram v. Town of Northbridge, 410 Mass. 800 (1991). In Cram, plaintiff brought an action against the Town of Northbridge alleging that the town was negligent in the repair and maintenance of a bridge on which plaintiffs son died in an automobile accident. A few months after the accident, plaintiff executed a Release and Settlement of Claim discharging the driver of the automobile. Defendant sought summary judgment on the ground that the release, to which the town had not been a party, discharged them from liability.
Plaintiffs reliance on Cram is misplaced. Interpretation of an unambiguous written agreement is ordinarily a matter of law. Carpenter v. Suffolk Franklin Savings Bank, 370 Mass. 314, 321-22 (1976). A release is a “jural act of high significance without which the settlement of disputes would be rendered all but impossible. It should never be converted into a starting point for renewed litigation except under circumstances and under rules which would render any other result a grave injustice." LaFleur v. C.C. Pierce Co., 398 Mass. 254, 261 n. 7 (1986).
Under Massachusetts law, a trust “is not a [separate] legal personality” of which a trustee acts as a “representative or agent.” Larson v. Sylvester, 282 Mass. 352, 357-58 (1933). Rather, the trustee acts at all times as an individual, albeit an individual with “fiduciary obligations to others.” Id. Moreover, the trustee of a realty trust is personally liable for torts committed in the administration of the trust even if he is not personally at fault. First Eastern Bank, N.A. v. Jones, 413 Mass. 654, 657-61 (1992).
In evaluating the i enewed summary judgment motion, I am cognizant of the Supreme Judicial Court’s statement in its March 10, 1999 decision that:
The defendant’s arguments that the document of release in the first action cannot be construed any other way than to release the Crantons in all their roles relating to the Haverhill property, and that the lead paint statute does not confer several liability for each ownership role relating to a given property, have some logical force. New Hampshire’s argument that the Crantons were acting in dual and separate capacities as trustees, on the one hand, and as property owners on the other, is somewhat less persuasive.
New Hampshire Ins. Co. v. McCann, 429 Mass. 202, 213 (1999).
Nothing in the Lead Paint Statute supports plaintiffs assertion that the Crantons themselves could be potentially liable multiple times for the same injury. The identification of the Crantons in the Release as “trustees" could not have the limiting effect of barring further claims against them as representatives of the trust while preserving claims against them as individuals because no such legal distinction exists. The Crantons owned and managed the property in one capacity — as individuals with obligations under a trust instrument. Under the Statute, they were personally responsible for ensuring that the premises complied with applicable statutory and regulatory lead paint requirements and were subject to personal liability for any failure to meet those require *303 ments resulting in injury to a tenant. The Crantons themselves were the “owners” of the property for purposes of the Statute, and as such, were individually subject to the duties imposed by the Statute and personally liable for any violations thereof.
The Release, drafted by the Langlois’ counsel, tracked the language of the complaint filed in the 1978 Action and identified the parties accordingly. I find and rule, therefore, that the Release expressly extended to any and all claims and potential claims arising from William Langlois’ alleged lead paint injury and that the Crantons were not potentially subject to multiple liability for the same lead paint injury.
It is well established that an attorney owes his client an obligation to exercise a reasonable degree of care and skill in performance of his legal duties. Glidden v. Terranova, 12 Mass.App.Ct. 597 (1981). In order to succeed on a legal malpractice claim, plaintiff must establish that defendants failed to exercise reasonable care and skill in handling the representation of New Hampshire in the 1978 Action, that plaintiff incurred a loss and that defendants’ malpractice was the proximate cause of the loss. DiPiero v. Goodman, 14 Mass.App.Ct. 929 (1982).
Applying this standard to the record before me, I find and rule that defendants owed New Hampshire no duty to insist upon inclusion of additional language in the Release. The Release as written extinguished all claims against the Crantons arising out of William Langlois’ injury. Given the adequacy of the Release, defendants’ conduct cannot be seen as the proximate cause of the filing of the 1992 Action. While an attorney has a duty to exercise reasonable care for the protection of a client involved in litigation, this duty does not extend to anticipating and seeking to avoid every claim — meritorious or not — that may be asserted against the client.
Because multiple liability could not extend to the Crantons under the Statute, I hereby find and rule that the language of the Release was on its face and as a matter of law effective to bar further claims against the Crantons based on William Langlois’ alleged lead paint injury during his tenancy in the Í970s. Neither New Hampshire’s settlement of the 1992 Action nor plaintiffs assertion of further claims against the Crantons in their individual capacities can provide a proper basis for a malpractice claim against defendants.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendants’ renewed motion for summary judgment is ALLOWED.

New Hampshire is merely a nominal party. Because New Hampshire assigned any rights of action it may have had against defendants to William Langlois, he is the real party in interest in this action.

The settlement document entitled "Agreement, Assignment and Authorization” stated in pertinent part that New Hampshire and the Crantons, in consideration of the sum of one dollar ($1.00) and a release of all claims by William Langlois against them, promised to do the following:
[S]ell, assign and transfer to said William Langlois, his executor, administrators and assigns, any and all of our rights, claims, demands and causes of action of any kind whatsoever, both at law and in equity, including under G.L.c. 176Dandthe Consumer Protection Act, Massachusetts General Laws Chapter 93A, which we have, had, or may have against attorney H. Burton Hampton, attorney John W. McCann and the law firm of Madan & Madan, or any other responsible entity, their agents, servants, employees and any and all other persons who acted for us and/or represents us in the case of Langlois u. Cranton, et al, C.A. #13315, Essex Superior Court; on remand, C.A. #781161...