Agnes, A.J.
INTRODUCTION
The plaintiff, Trustees of the Denholm Condominium Trust (“Denholm"), brought this action against the Trustee of Vickers Realty Trust, Robert G. Doyle (“Doyle”), and the Flagship Bank and Trust Company (“Flagship”) seeking payment of common area expenses for a condominium unit located at 484 Main Street in Worcester, MA. Summary judgment has been granted in favor of the plaintiff. The Court conducted a hearing under Mass.R.Civ.P. 55(b)(2) and assessed damages consisting of common area fee arrearages with interest and late fees, attorneys fees, and collection costs. Doyle objects to the proposed judgment, as it contains language holding him personally liable for the debts of the Vickers Realty Trust.
FACTUAL BACKGROUND
The Denholm Condominium, located at 484 Main Street in Worcester, MA was established on December 30, 1982 by a Master Deed recorded in the Worcester County Registry of Deeds. Doyle, as sole Trustee of the Vickers Realty Trust, is the record title owner of Unit 535 of the Denholm Condominium, pursuant to a Unit Deed dated October 18, 1995 and recorded in the Worcester County Registry of Deeds. The Vickers Realty Trust did not pay the Condominium fees assessed to all unit owners for the common expenses of the Condominium under G.L.c. 183A, §6. Denholm sued to collect these unpaid fees under G.L.c. 183A, §7, and on February 18, 2004, the Court granted Denholm’s motion for summary judgment, concluding, “[Defendant Robert G. Doyle, Trustee, is liable for the unpaid common area assessments for Unit 535 including ‘late charges, fines, penalties and interest assessed by the organization of unit owners and all costs of collection including attorneys fees, costs and charges.’ ” After the order was issued, Doyle continued to insist that, although the Vickers Realty Trust may be liable for the judgment, the liability for the judgment rests only with the trust, and not with him personally.
DISCUSSION
Doyle claims that, although the Vickers Realty Trust is liable for payment of the condominium fees, he, in his position as Trustee, is not personally liable due to provisions set forth in the trust declaration. Language in the Vickers Realty Trust declaration states:
No Trustee hereunder shall be liable for any error of judgment nor for any loss arising out of any act or omission in good faith, but shall be responsible only for his own willful breach of Trust. All persons extending credit to or contracting with or having any claim against the Trustee(s) hereunder shall look only to the Trust property or any such contract or claim, and neither the TrusteeO [sic] nor any Beneficiaries shall be personally liable therefore. Any instrument executed by the Trustee shall provide that the Trust property only, and not the Trustee]) [sic], or the Beneficiaries, shall be liable individually thereunder.
G.L.c. 203, §14A provides that, “Unless otherwise provided in the contract, a trustee shall not be personally liable on contracts properly entered into in his fiduciary capacity in the course of administration of the trust estate unless he failed to reveal his representative capacity and identify the trust estate in the contract.” This statute, however, does not apply in this case because the statutory exemption from personal liability does not extend to trustees in the conduct of business affairs; rather, it was intended to cover a trustee acting under a trust of a donative type associated with probate practice. See Fox of Boylston St Ltd. P’ship v. Mayor of Boston, 418 Mass. 816, 818 (1994); First Eastern Bank, N.A. v. Jones, 413 Mass. 654, 654-55, 659-61 (1992).
Alternatively, the Trustee in this case also relies on the proposition that one who deals with an agent with knowledge of specific limitations on the agent’s authority cannot hold the agent liable for acts outside those limitations. See Charlestown Savings Bank v. Gorin, 345 Mass. 771, 771 (1963); McCarthy v. Parker, 243 Mass. 465, 468 (1923). There is generally no need to prohibit an agreement that a creditor in case of default look exclusively to a fund for reimbursement, as long as he has knowledge of that limitation. See id. In this circumstance, the sale of the condominium to the Vickers Really Trust was made with at least constructive knowledge of the limitations on liability of the trustee, and thus could fall into this category.
*26 However, in the context of condominium association fees, the Massachusetts Legislature has enacted a statute that specifically provides for personal liability for unpaid condominium fees. See G.L.c. 183A, §6(b). According to the statute, “The unit owner shall be personally liable for all sums assessed for his share of the common expenses including late charges, fines, penalties, and interest assessed by the organization of unit owners and all costs of collection including attorneys fees, costs, and charges.” Id. (emphasis added).
The current language of §6(b) was inserted into c. 183A by the Legislature in 1992 by an Act entitled “An Act Relative to the Protection of Condominium Residents.” St. 1992 c. 400, §7. Section 1 of the Act notes:
It is hereby found and declared by the general court that a serious public emergency exists within the commonwealth with respect to the housing of a substantial number of residents of condominiums, created pursuant to chapter one hundred and eighty-three A. This emergency has been created by a policy of disinvestment by unit owners who are no longer paying their lawfully assessed share of the common expenses. Without the payment of these common expenses, condominium buildings are falling into physical and financial disrepair, causing neighborhood blight, and jeopardizing the public health, safety, and welfare. It is therefore necessary that the general court take action to aid condominium associations.
Under the auspices of this policy statement, the Legislature added to G.L.c. 183A the current language of §6(b) that provides for personal responsibility for common area condominium fees. This legislative history suggests that the language of §6(b) was added in order to protect the viability of condominiums, which leads to the conclusion that it would be contrary to G.L.c. 183, §6(b) to allow Mr. Doyle to avoid liability simply by buying the unit through a trust. Put differently, the language of G.L.c. 183A, §6(b) represents a public policy decision by the Legislature to preclude the use of non-recourse arrangements in the context of liability for condominium association fees. Contrast Sylvia v. Johnson, 44 Mass.App.Ct. 483 (1998) (parties generally are free to limit the liability of either party in the event of a default).
Although the Massachusetts appellate courts have not addressed the personal liability of a Trustee in relation to the payment of condominium fees, there are additional public policy reasons for the statute’s requirement of personal responsibility. Trustees of the Prince Condo. Trust v. Prosser, 412 Mass. 723, 725-26 (1992); Blood v. Edgar’s, Inc., 36 Mass.App.Ct. 402, 405-06 (1994); Baker v. Monga, 32 Mass.App.Ct. 450, 454 (1992). In Prince, the Court rejected the ability of a unit owner to withhold common expense fees due to an alleged offset, noting that the obligation of a condominium unit owner to pay any assessment of common expenses is an independent obligation not subject to offset. 412 Mass, at 725-26. The Court spoke directly to the policy issues raised in the current case when it noted:
Whatever grievance a unit owner may have against the condominium trustees must not be permitted to affect the collection of lawfully assessed common area expense charges. A system that would tolerate a unit owner’s refusal to pay an assessment because the unit owner asserts a grievance, even a seemingly meritorious one, would threaten the financial integrity of the entire condominium operation.
Id. (emphasis added).
Allowing the defendant to avoid personal responsibility in this case would promote a policy encouraging condominium unit buyers to establish a trust or convey property into a trust containing similar language as in the Vickers Realty Trust in order to avoid any personal liability that might arise out of ownership of the unit. This policy would be contrary to the notion that “maintenance charges and other proper assessments are necessary to the sound ongoing financial management and stability of the entire complex.” See Baker, 32 Mass.App.Ct. at 454. Thus, the Trustee, Robert G. Doyle, can be held personally liable for the damages caused by the Vickers Realty Trust’s nonpayment of common expense fees.
The result reached in this case is consistent with other decisions of the Superior Court with respect to the individual liability of a trustee of a Massachusetts Realty Trust. See, e.g., New Hampshire Ins. Co, Inc. v. Madan & Madan, Civil No. 953824 (Suffolk Super. Ct. Jan. 5, 2000) (Hinkle, J.) (11 Mass. L. Rptr. 300) (law firm did not commit malpractice by only including the defendants as trustees and not as individuals in a release and indemnity agreement discharging liability. “Under Massachusetts law, a trust ‘is not a (separate) legal personality’ of which a trustee acts as a ‘representative or agent.’ Rather, the trustee acts at all times as an individual, albeit an individual with ‘fiduciary obligations to others.’ Moreover, the trustee of a realty trust is personally liable for torts committed in the administration of the trust even if he is not personally at fault.” (Citations omitted.)); Kveraga-Olson v. Sternberg, Civil No. 962085F (Suffolk Super. Ct. June 10, 1997) (Doerfer, J.) (7 Mass. L. Rptr. 49) (Trustees of a nominee trust containing real property were personally liable for tortuous actions taken in their capacity as trustees, including breach of fiduciary duty, fraudulent conveyance, and abuse of process).
ORDER
For the foregoing reasons, ajudgment should enter that the Trustee, Robert G. Doyle, is personally liable for the damages caused by the Vickers Realty Trust’s nonpayment of common expense fees.