WILLIAM RUDOW vs. ALBERT FOGEL.

Essex. September 15, 1978. — November 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & LIACOS, JJ.

*Res Judicata. Collateral Estoppel. Parent and Child.*

In an action by a father on behalf of his son seeking a judgment that the defendant held certain real property in trust for the son, the defense of res judicata was not established by a prior adjudication that a trust had not been made out on the facts where there was no legal identity between the father litigating on his own behalf in the prior case and as representative of his son in the latter and where the determination concerning the trust in the prior action was not essential to the judgment in that action. [589–592]

BILL IN EQUITY filed in the Superior Court on January 12, 1973.

A motion for summary judgment was heard by *Hallisey,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Alfred D. Ellis* for the defendant.
*James T. Ronan* for the plaintiff.

KAPLAN, J. On further appellate review (G. L. c. 211A, § 11), we state our reasons for agreeing with the ruling of the Appeals Court on a question of former adjudication. *Rudow* v. *Fogel,* 6 Mass. App. Ct. 822 (1978).

William Rudow, a minor, by his father Marvin, in 1973 commenced the present action in the Superior Court, Essex County, against his uncle Albert Fogel to obtain a judgment that Fogel holds certain real property in Rockport on a trust for him, William. The complaint alleged, in substance, that Marvin purchased the property in 1958, taking it in his name and that of his wife Florence (William's mother) as tenants by the entirety; that Marvin in March, 1962, quitclaimed his interest to Florence on the understanding and agreement that she would hold the property in trust for their son William; and that Florence in July, 1962, conveyed the property without consideration to Fogel (her brother), the latter knowing of the understanding with respect to William and agreeing to hold the property on the same trust. The complaint went on to charge that Fogel was repudiating his trust obligation, wherefore relief was sought.

Fogel, answering, alleged by way of defense that in a prior action there had been an adjudication against the existence of the trust which should carry over as res judicata to the present action. Fogel then moved for summary judgment, and from his supporting papers we learn that the prior action was one of ejectment[1] by Fogel against Marvin in the District Court of Eastern Essex. Fogel claimed a right to the possession and asserted that Marvin was in wrongful possession. Marvin attacked Fogel's claimed right by pointing to the supposed trust, and justified his own possession by right of curtesy, as he had survived Florence who received the fee during the marriage. Proof was taken and the judge found, first, a trust was not made out on the facts; second, Marvin was enti-

---

[1] Under G. L. c. 231, § 9, as it appeared prior to its amendment by St. 1973, c. 1114, § 159.

tled to curtesy and was thus, in effect, a common tenant for his lifetime with Fogel, and could not be ejected at Fogel's suit.[2] Judgment entered for Marvin.

The judge of the Superior Court in the present action allowed Fogel's motion for summary judgment, evidently believing that the defense of res judicata had been established. This was held by the Appeals Court to be error.

The determination against Marvin in the ejectment action on the issue of the existence of the trust cannot be used preclusively against William in the current action for the reason that there is no sufficient legal identity between the defendant in the first action and the plaintiff in the second. Argument to the contrary has a superficial attractiveness because of the parent-child relationship, but considerations of policy forbid assimilation in this context of an individual litigating on his own behalf (Marvin being sued personally in the first action) with that individual litigating as representative of another (Marvin acting for William in the present action). "A person . . . may have more than one legal capacity. A legal capacity other than one's individual capacity is by definition representative of interests of others. The rule that a person appearing in litigation in one capacity is not, generally speaking, affected thereby in another legal capacity serves to safeguard the integrity of such representative functions." Restatement (Second) of Judgments § 80, Comment a (Tent. Draft No. 2, 1975). See *id.*, Comment b and Illustration 2; F. James & G. C. Hazard, Jr., Civil Procedure § 11.6, at 536-537 (2d ed. 1977). We have accepted this familiar principle in the past. See *Goff* v. *MacDonald*, 333 Mass. 146, 150 (1955). The case of *Detore* v. *McKinstery*, 322 Mass. 190 (1947), was not understood by this court to be in derogation of it.[3] *Dwight* v. *Dwight*,

---

[2] This account of the ejectment action was supplied by the opinion and findings of the judge of the District Court, annexed to the defendant Fogel's motion for summary judgment. As to the use of extrinsic evidence to determine what issues were litigated, see Restatement (Second) of Judgments § 68, Comment f (Tent. Draft No. 4, 1977).

[3] In *Detore*, a minor, by his father, sued for personal injuries and for items of medical expenses and the like. The action was lost. Then the

371 Mass. 424, 427-428 (1976), is entirely out of point: it held that a guardian ad litem for certain beneficiaries of a trust, bringing an action to restore property belonging to the entire trust, and joining the reluctant trustee and the wrongdoers, necessarily represented the trustee and the other beneficiaries as well (they had knowledge of the action), so that a judgment for the guardian merged and extinguished any claim by those others for additional recovery; it was as if the trustee had sued for the trust and recovered. Fogel presses on us other authority, but it does not help his cause on the question of identity.[4]

---

father sued the same party for those consequential items. He was held precluded. This was in line with considerable authority that the inclusion of such items in the action on the minor's behalf is an implicit relinquishment by the parent to the child of any claim the former might have therefor. See Annot., 32 A.L.R.2d 1060, 1083 (1953); Restatement (Second) of Judgments § 80, Comment c and Illustration 7 (Tent. Draft No. 2, 1975). Closely related is the situation where a person is precluded because his claim is derivative from another's (e.g., a spouse's claim for loss of "consortium") and that other has pressed his or her claim and lost. Cf. Illustration 8. These classes of cases are brought together under a coherent rationale in Restatement (Second) of Judgments § 93 (Tent. Draft No. 3, 1976) ("Actions for Losses Resulting from Personal Injury to Another Person"), with Reporter's Note citing the Detore case.

[4] In Jones v. Mitchell Bros. Truck Lines, 273 Or. 430 (1975), rehearing denied, 274 Or. 109 (1976), a husband sued as guardian for his disabled wife to recover for her personal injuries suffered in an accident. The case was lost for lack of proof of negligence. Then the husband sued the same defendants for his own injuries in the same accident. He was held precluded on the negligence issue because he had been in "control" of the first action. The court relied (274 Or. at 111) on Restatement (Second) of Judgments § 83 (Tent. Draft No. 2, 1975) ("Person Who Controls Participation"), but overlooked Comment e which warns in effect against using the idea of "control" described in that section to subvert the rule of § 80 distinguishing individual from representative capacities. In all events the court concedes (273 Or. at 435) that had the husband brought his individual action first, any "control" idea would be irrelevant and a finding of lack of negligence would not carry over to a later suit by the husband as guardian. But that in substance is the sequence in our present case.

If that question could be overcome and the same persona could be conceived to have litigated in both actions, it would still be wrong to apply in the later action the determination in the earlier that a trust had not been raised. For it is a condition of such "issue preclusion" (terminology now favored over "collateral estoppel") that the determination to be carried over shall not only have been litigated in the first action, but shall have been essential to the judgment in that action. This was the nub of *Cambria* v. *Jeffery*, 307 Mass. 49 (1940), where in a collision case the court found the plaintiff negligent and the defendant also negligent, with judgment for the defendant: the finding of defendant's negligence being unnecessary to the judgment—indeed, taken of itself, repugnant to the judgment—could not be transported to, and given preclusive effect in a later action by the defendant against the plaintiff based on the same collision.[5] See *Henchey* v. *Cox*, 348 Mass. 742, 747 (1965); *Kalmus* v. *Kalmus*, 330 Mass. 41, 47 (1953); *Wayland* v. *Lee*, 325 Mass. 637, 641 (1950); Restatement (Second) of Judgments § 68, Comment h (Tent. Draft No. 4, 1977).[6] The reason for this requirement of essentiality partakes of the reason why a dictum is usually given less weight as a precedent in our law than a holding; in addition we have in the *Cambria* case the important consideration that the defendant, as the winner in the first action, had no occasion or right to take an appeal to challenge the finding that he was negligent. See F. James & G. C. Hazard, Jr., *supra*, § 11.19; Developments in the Law—Res Judicata,

[5] Under the rules of procedure in force at the time of *Cambria*, the defendant was not obliged to assert his claim against the plaintiff in the first action by way of compulsory counterclaim.

[6] Section 68 states the general rule thus: "Issue Preclusion—General Rule. When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." (Exceptions appear in § 68.1.)

65 Harv. L. Rev. 818, 845 (1952); Scott, Collateral Estoppel by Judgment, 56 Harv. L. Rev. 1, 12-15 (1942). So, in our situation, Marvin for all that appears had neither cause nor opportunity to take to a higher court for possible review and reversal the finding of the District Court that negated the existence of the trust.

A divided court in *Home Owners Fed. Sav. & Loan Ass'n v. Northwestern Fire & Marine Ins. Co.*, 354 Mass. 448 (1968) (4-3), suggested that it might be enough for issue preclusion that the determination, although not essential, shall have been well litigated ("*treated as* essential to the case by the party to be bound and by the court," at 451, emphasis supplied). Were that proposition to be accepted, we would still have no particular assurance that the indicated condition was met in the present case. But the proposition is itself doubtful, and in any case the Home Owners decision seems explicable on grounds that leave the *Cambria* principle intact for the generality of cases.[7]

---

[7] In *Home Owners*, Bank A sued Insurer B for a fire loss. The court found the policy was in force at the time of the casualty but Bank A had not made timely proof of loss; thus judgment went for Insurer B. Bank A then sued Insurer C on an "errors and omissions" policy insuring against loss from error or accidental omission in carrying out its regular practice of maintaining insurance on properties on which it held mortgages. The determination that the fire policy was in effect was held binding on Bank A in the second action although it was not essential to the first judgment. The case is distinguishable from *Cambria* in that (i) the determination in the first action was favorable to Bank A, (ii) Bank A, having lost that action, could have appealed the judgment. It has been suggested, also, that the decision in *Home Owners* can rest on a doctrine of "preclusion of inconsistent positions," not strictly a matter of res judicata. See Restatement (Second) of Judgments, Reporter's Note to § 68, Comment h (Tent. Draft No. 4, 1977) (referring to the *Home Owners* case); Developments in the Law— Res Judicata, 65 Harv. L. Rev. 818, 845-847 (1952). The intimation in *Albano* v. *Jordan Marsh Co.*, 5 Mass. App. Ct. 277, 279 (1977), that the Second Restatement supports a relaxation of the *Cambria* principle on the lines of *Home Owners*, seems inaccurate, as indicated by the text of § 68, quoted at note 6, *supra*. (It will be noted that, assuming satisfaction of the *Cambria* problem, *Home Owners* presents one of the situations where "mutuality of estoppel" is not required; thus A, de-

Thus we agree that the judgment of the Superior Court should be reversed.

*So ordered.*

feated on an issue in an action against B, would be precluded on the same issue in an action against C. See Restatement [Second] of Judgments § 88, Appendix [Tent. Draft No. 3, 1976].)