MENDEL KERN, INC. *vs.* WORKSHOP, INC., & others[1]
(and a companion case[2]).

Suffolk.  May 7, 1987. — June 15, 1987.

Present: HENNESSEY, C.J., WILKINS, NOLAN, & LYNCH, JJ.

*Contract*, What constitutes, Lease of real estate, Option. *Landlord and Tenant*, Extension of lease, Lease as contract, Option to purchase, Renewal of lease. *Attorney at Law*, Disqualification. *Witness*, Attorney as witness. *Evidence*, Judicial notice.

A so-called letter of intent containing an outline of matters discussed by a lessor and its lessee pursuant to the lessee's decision to exercise its option to renew a lease, in which letter the parties contemplated being bound only by documents to be executed in the future, did not constitute a complete and final contract; furthermore, even if the parties had intended the letter to be a binding contract, there was a failure to perform by the date upon which the parties had settled for performance. [279-281]

The judge at the trial of a civil action, having previously made his intention clear that he would not permit the defendants' long-time attorney to appear voluntarily as a witness for his clients while he was functioning as their trial counsel, did not err in denying the plaintiff's motions to require the defendants' counsel to withdraw pursuant to S.J.C. Rule 3:07, DR 5-102 (A), where the record did not indicate that counsel's decision not to withdraw, while undesirable in the circumstances, affected his client's probability of success at trial. [281-282]

The judge at the trial of a civil action properly refrained from taking judicial notice of a redevelopment project near the premises at issue, where that project was not the subject of such general knowledge and notoriety as to require such notice. [282]

CIVIL ACTION commenced in the Superior Court Department on May 8, 1981.

---

[1] The Newman Memorial Religious School Corp. and Albert J. Onessimo, trustee of Salvation Chapel Trust.

[2] Albert J. Onessimo *vs.* Mendel Kern, Inc.

SUMMARY PROCESS. Writ in the Boston Municipal Court Department dated July 6, 1981.

The cases were consolidated for trial in the Superior Court Department and were heard by *James P. Lynch, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Steven S. Epstein (Philip D. Epstein* with him) for Mendel Kern, Inc.

*Robert D. O'Leary (John W. Burt* with him) for Workshop, Inc., & others.

NOLAN, J. These two actions were consolidated for trial and we consider them together on appeal. The first is a complaint for declaratory judgment by Mendel Kern, Inc. (Kern), against Workshop, Inc. (Workshop), and the other defendants[3] that it has a binding, long-term lease, option to purchase, and right of first refusal as to certain commercial property (the premises) on Merrimac Street in Boston. The second action is by Workshop for recovery of possession of the premises in summary process against Kern. Judgment was entered in the Superior Court declaring, among other things, that Kern had no lease or option to purchase the premises, and that Workshop in the summary process action was entitled to the possession of the premises. Kern appealed to the Appeals Court and we transferred the cases on our own motion. We affirm.

From the trial judge's exhaustive and penetrating findings of fact, we learn that, as early as 1966, Kern and Workshop executed a ten-year lease which contained an option to renew for a further period of five years. During the initial ten-year period, a dispute arose and Kern sued Workshop in 1975, claiming, among other things, that Workshop had violated the covenant of quiet enjoyment.

Meanwhile, Kern exercised its option to renew the lease. Kern and Workshop instructed their attorneys to pursue an amicable solution. Mr. Robert D. O'Leary, representing Workshop, met with Kern's attorney on August 2 and 8, 1978. On August 10, 1978, Kern's attorney wrote to Mr. O'Leary and

---

[3] We shall refer to the defendants as Workshop.

enclosed a check for $100 as deposit for additional space at the premises. On August 11, at Mr. O'Leary's office, the principals discussed additional space, options to renew for five-year periods through 1998, an option to purchase, a right of first refusal, and other matters.

At this meeting, Mr. O'Leary composed a "letter of intent," outlining the matters discussed. Mr. O'Leary wrote by hand the letter of intent and it was signed by Workshop. A typewritten copy of the letter was signed by Kern.

1. *The letter of intent.* Kern argues that the letter of intent creates rights to a new lease, covering additional space, an option to purchase, a right of first refusal, as well as other matters. Workshop, on the other hand, claims that the letter of intent was not an operative document, that it contained none of these rights, but was rather a document that contemplated the execution of other documents such as a lease. The judge ruled that the letter of intent was not an operative document but a memorandum of future contractual intent. We agree. The language tends to support this conclusion. It is cast in the future tense. It provides that the old lease "*will be* further amended." Additional space "*shall be incorporated* in the lease." Kern "*shall be given* written permission" to make certain changes in the premises. Kern "shall have" an option to renew. Existing mortgages "are to be subordinated" to the new lease. The existing lawsuit by Kern against Workshop "*shall be* terminated by the filing of an agreement for neither party." Finally, Kern's attorney "*will send* [a] letter acknowledging agreement to be signed upon receipt of this letter of intent." (Emphasis added.)

Following his receipt of the letter of intent, Kern's attorney wrote Mr. O'Leary, who was then going on vacation, and advised him that the terms of the letter of intent would be "embodied in a formal lease extension" which would then be executed by the principals on Mr. O'Leary's return from vacation.

The letter of intent specified September 1, 1978, as the date by which "[f]inal papers [were] to be executed." No final papers were tendered by that time. In fact, none of the items

of agenda in the letter of intent was accomplished. On October 26, 1978, Kern's attorney forwarded certain instruments (among them a proposed fifteen-page lease) to Mr. O'Leary. Workshop's principal refused to consider executing the lease because September 1, 1978, the performance date, had passed. He recognized "no deal" between himself and Kern. For reasons that are not at all clear, the parties continued to play their customary roles of lessor and lessee and Kern continued to make rent payments to Workshop until January 18, 1980, when the 1975 lawsuit was called for a pretrial conference.

When the case was reached for trial on January 21, 1980, it was reported settled and an "Order for Entry of Dismissal Nisi" was entered and on February 19, 1980, a judgment of dismissal was entered, dismissing the complaint without prejudice and without costs. Workshop pressed Mr. O'Leary for a release which Kern gave to Workshop. The consideration recited for the release from Kern was the "execution of [a] long term lease between the parties in accordance with the terms thereof." There is no indication that Workshop ever gave a release to Kern.

Kern's attorney again on August 13, 1980, sent a set of documents, duplicating those that he sent in 1978, and again Workshop would not change its position. When a prospective buyer showed an interest in purchasing the premises, Mr. O'Leary took the position that Kern had no lease which extended beyond June 1, 1981, and Kern's attorney countered by asserting a claim to a long-term lease that commenced in 1978 and ran for ten years with options to renew for a total of an additional ten years, with an option to purchase and a right of first refusal. The parties remained in this position until May, 1981, when the instant litigation was commenced.

The judge correctly concluded that the letter of intent was a memorandum in which the parties expressed an intention not to be bound until a final agreement was executed. See *Rosenfield* v. *United States Trust Co.*, 290 Mass. 210, 216 (1935). The letter of intent represented the expression of "imperfect negotiation," and not a complete and final contract. *Id.* at 217. The judge accurately expressed the law that an intention to do

something is not necessarily a promise to do it. See *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 632 (1979).

The language which has been cited above seems to compel the conclusion that the parties contemplated being bound only by documents to be executed in the future. The fact that the parties intended that a final lease would be forthcoming is cogent evidence that they did not intend that the letter of intent, even when accepted by Kern, would constitute a binding agreement. See *Wasserman* v. *Roach*, 336 Mass. 564, 567-568 (1958).

However, even if the parties intended the letter of intent to be a binding contract, there manifestly was a failure to perform by September 1, 1978, the date upon which the parties had settled for performance. Kern took no steps to comply with this time constraint nor did it try to enlarge the time. Therefore, it will not be heard to complain now. See *Miller* v. *Campello Coop. Bank*, 344 Mass. 76, 79 (1962) (contract resembling an option cannot be permitted to run beyond the period which the parties contemplated).

2. *Counsel's role.* Mr. O'Leary was Workshop's attorney from the earliest days of the parties' negotiations in 1966 and continued to represent Workshop and its principal throughout the trial of this action and the present appeal. Three motions before three different Superior Court judges (including the trial judge) were brought by Kern to disqualify Mr. O'Leary from trying the case. All three judges denied the motions. Workshop's principal insisted on Mr. O'Leary's representation of him and Workshop. The trial judge made it clear that he would not permit Mr. O'Leary "to appear voluntarily as a witness for his clients while he was functioning as their trial counsel." Mr. O'Leary was not called as a witness by Kern. There was no error in denying the motions to require Mr. O'Leary to withdraw pursuant to S.J.C. Rule 3:07, DR 5-102 (A), as appearing in 382 Mass. 780 (1981). A judge should order disqualification only when the decision "to forgo the testimony of counsel appears obviously contrary to the client's interests." *Borman* v. *Borman*, 378 Mass. 775, 791 (1979). In this case, the record does not indicate that Mr. O'Leary's decision not

to withdraw affected his clients' hope of success. See *id*. However, Mr. O'Leary should have shown the good sense to step aside voluntarily because his intimacy with all the facets of the case led him to lead, suggest, and ·almost testify while interrogating the witnesses. This is manifestly undesirable and it rendered the trial judge's task (already a formidable one), a most difficult one.

3. *Judicial notice*. There was no error in the judge's not taking judicial notice of a redevelopment project within 200 yards of the premises because that project was not the subject of such general knowledge and notoriety as to require judicial notice. See *Mady* v. *Holy Trinity Roman Catholic Polish Church*, 223 Mass. 23, 26 (1916).

4. *Conclusion*. Accordingly, we affirm the judgment of the Superior Court.

*So ordered.*