ROBERT A. JONES & others, trustees,[1] *vs.* CONSOLIDATED RAIL CORPORATION; MASSACHUSETTS BAY TRANSPORTATION AUTHORITY, third-party defendant (and four companion cases[2]). No. 90-P-1560. August 28, 1992. *Contract*, What constitutes. *Real Property*, Easement. *Railroad*.

On November 20, 1986, the Massachusetts Bay Transportation Authority (MBTA) and the Consolidated Rail Corporation (Conrail) entered into a lengthy and detailed "Trackage Rights Agreement." At the core of this dispute is language contained in § 10.02 of that agreement, which is entitled "Transfer of Easements." The opening sentence of that section states that "[t]he parties agree to grant to each other, at a closing to be held not later than sixty (60) days following the date of execution of this Agreement, the rights or interests described below." One of those so recited provisions, subsection (b), provides that "CONRAIL *shall* grant to MBTA a one-track easement and right of first refusal to operate its service over the Grand Junction Secondary Track, MP 0.0 to 2.7, in the form substantially

---

[1]K. George Najarian and David Clem, who, together with Jones, are trustees of the Old Binney Realty Trust.

[2]Massachusetts Bay Transportation Authority *vs.* Far VI Limited Partnership; Massachusetts Bay Transportation Authority *vs.* Roman Catholic Archbishop of Boston; Massachusetts Bay Transportation Authority *vs.* Massachusetts Institute of Technology; and Massachusetts Bay Transportation Authority *vs.* Canal Realty Corp.

equivalent to EXHIBIT 8, attached hereto and incorporated by reference" (emphasis supplied). Exhibit 8, in turn, states that the easement and right of first refusal are in "[t]he land of the line of railroad known as the Grand Junction Secondary located in Boston, County of Suffolk and in Cambridge and Somerville, both within County of Middlesex, between Mileposts 0.0 and 2.7 as shown on the Valuation Map recorded in Suffolk Registry of Deeds, Book ____, Page ____, together with all running, interchange, switching, and side tracks (except privately owned industrial side tracks), and all signals, utility lines, drains, and other facilities used in connection with the operation, maintenance and construction of the Grand Junction Secondary (hereafter called "the tracks and related facilities"), being the same premises described in [left blank]" (emphasis supplied). The problem with this language is that the general reference points do not enable the parties to draw an adequate description of the particular lots contemplated for transfer to the MBTA. Nor was any valuation map ever drawn. The Trackage Rights Agreement by its own terms required the parties to negotiate the precise boundaries in order to finalize the accord. Section 10.02 does not purport to be a memorialization of an existing agreement. See *Mendel Kern, Inc.* v. *Workshop, Inc.*, 400 Mass. 277, 279 (1987).

We assume that the contemplated closing never occurred and that a final version of the above document, complete with specific map references, was never executed, for the record does not include such a document, nor does the MBTA assert that such a document exists.

After negotiating the purported right of first refusal with the MBTA, Conrail, at various times, separately conveyed or agreed to convey five plots of land, all of which were contiguous to the rail tracks described in exhibit 8, to the plaintiffs and each of the four defendants in the companion cases. Conrail apparently became reluctant to consummate its deal with the plaintiffs, who responded by bringing this action for specific performance. Conrail, in turn, impleaded the MBTA, and then conveyed the sought after land to the plaintiffs anyway, rendering the underlying action moot. The MBTA, which had answered and asserted several counterclaims, amended its third-party complaint to include a count for declaratory relief pursuant to G. L. c. 231A. Meanwhile, the MBTA had commenced separate actions against four other entities (the companion cases) that had also purchased property from Conrail in alleged violation of the MBTA's right of first refusal. A judge of the Superior Court consolidated the five cases pursuant to Mass.R.Civ.P. 42(a), 365 Mass. 805 (1974), and, after considering documentary evidence pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), ordered entry of a judgment, dispositive of all five cases, declaring that the MBTA had not acquired from Conrail a right of first refusal which encompassed the five lots in question or similarly situated land. The MBTA has appealed.

It is our view that the judgment must be affirmed because the pertinent language of the Trackage Rights Agreement does not create an enforceable right of first refusal in the MBTA. The relevant language chosen and executed by the parties here is controlled by the line of cases holding that inchoate language, which both anticipates a final agreement and is imperfect in material respects, fails to bind the parties. *Rosenfield* v. *United States Trust Co.*, 290 Mass. 210, 216-217 (1935). See *Lucey* v. *Hero Intl. Corp.*, 361 Mass. 569, 574 (1972) (land purchase option unenforceable because it "did not contain a sufficient description of the land subject to the option"). See also cases collected in *Goren* v. *Royal Invs. Inc.*, 25 Mass. App. Ct. 137, 140 n.3 (1987); *Blomendale* v. *Imbrescia*, 25 Mass. App. Ct. 144 (1987). Contrast *Coan* v. *Holbrook*, 327 Mass. 221, 224 (1951); *Goren* v. *Royal Invs. Inc.*, *supra* at 141-143, and authorities cited; *Novel Iron Works, Inc.* v. *Wexler Constr. Co.*, 26 Mass. App. Ct. 401, 407-410 (1988). We may, of course, rest our decision on this ground, which was argued below, even though the motion judge appears to have relied primarily upon another rationale in his decision. *Dexter's Hearthside Restaurant, Inc.* v. *Whitehall Co.*, 24 Mass. App. Ct. 217, 222 (1987). See also *Champagne* v. *Commissioner of Correction*, 395 Mass. 382, 386 (1985). In the circumstances, we do not reach the central issue stressed by the MBTA on appeal, that is, whether there is a triable issue of fact as to whether the language of the agreement supported the MBTA's position that it had a first right of refusal in the real estate adjacent to the secondary track.

The parties' invocation in subsection (b) of § 10.02 of the phrases Conrail "agree[s] to grant" and "shall grant" suggest that this draft, albeit complex and detailed, "was not an operative document . . . [and that the parties] contemplated the execution of other documents." *Mendel Kern, Inc.* v. *Workshop, Inc.*, 400 Mass. at 279. By no means does the mere use of like terms, which look forward to the execution of final or more formal documents, preclude a conclusion that the parties "intended to be bound presently." *Coan* v. *Holbrook*, 327 Mass. at 224. Here, however, the parties decided to leave blank the two places in the agreement calling for a more specific description of the land in which they were proposing to extend the MBTA's right of first refusal, despite mentioning "tracks," "switches," and other equipment and improvements upon the land that are presumably adjacent to the track. Since the parties omitted from exhibit 8 any specific description of contiguous real property, it is clear that this condition of the agreement was nascent, hence the later closing date. It cannot be said, therefore, that the execution of such a final document, locking in the MBTA's contractual right of first refusal, was merely a "formality." *Ibid.* The deliberate omission of the specific registry of deeds page numbers and the unmodified use of the word "premises" compels the conclusion that the scope of the MBTA's rights had yet to be carved out. The parties "had [only] reached the stage of 'imperfect negotiation' and

not of a completed contract." *Rosenfield* v. *United States Trust Co.*, 290 Mass. at 217.[3]

*Judgment affirmed.*

*Sidney Weinberg* for Massachusetts Bay Transportation Authority.

*B. Deidre Brennan* (*Robert L. Farrell* & *Leonard F. Zandrow, Jr.*, with her) for Consolidated Rail Corporation.

*Bennett H. Klein* for Far VI Limited Partnership.

*Marla B. Hurwitz* for the plaintiffs, *Ronald E. Harding*, for Canal Realty Corp., & *Francis J. O'Connor*, for Roman Catholic Archbishop of Boston, were present but did not argue.

*Leonard M. Singer*, for Massachusetts Institute of Technology, amicus curiae, submitted a brief.

---

[3]Our conclusion renders it unnecessary for us to consider whether the relevant aspect of the agreement, if binding, is unenforceable because the omission of a specific description of the land in question contravenes the Statute of Frauds, G. L. c. 259, § 1, and whether parol evidence might have been considered in the circumstances. See *Fogg v. Price*, 145 Mass. 513, 515 (1888). Cf. *Klein v. Brodie*, 167 Mont. 47, 50 (1975) ("the pre-emptive right agreement is fatally defective because it is impossible to determine the description of the property to which the right applies with accuracy, even though resort is had to extrinsic evidence"), discussed in 1A Corbin, Contracts § 261 (Supp. 1992) (although result reached is probably correct, court should have relied on the failure of the land description to satisfy the Statute of Frauds). Contrast *Mercer v. Lemmens*, 230 Cal. App. 2d 167, 170-171 (1964).