Doerfer, J.
INTRODUCTION
Plaintiff Linda Sternberg, an attorney, filed C.A. No. 94-0675B against defendants John and Patricia Kveraga, and reach and apply defendants Joanne Kveraga-Olson and Robert Olson in their capacities as trustees, seeking to collect a debt for legal services rendered. Thereafter, the Olsons filed the present suit, C.A. No. 96-2085F, against Sternberg and the Kveragas seeking a declaratory judgment with respect to the validity of the judgment and order ultimately rendered by this Court in Action No. 94-0675B. At issue in the declaratory judgment action is the protection of the rights of the Kveragas’ minor child, Collette, as the beneficiary of a family trust, in light of allegations that the trustees were never properly served in the original action and that the trust property was fraudulently sold for well below market value to Mr. Kveraga’s girlfriend.
This matter is before the court on the parties’ cross-motions for summary judgment pursuant to Mass.R.Civ.P. 56(c). Also before the court is the Olsons’ motion to dismiss the counterclaims against *50 them pursuant to Mass.R.Civ.P. 12(b)(2), 12(b)(4), 12(b)(5) and 12(b)(6) and Sternberg’s motion to disqualify counsel. For the reasons discussed below, Sternberg’s motion for summary judgment is DENIED and the Olsons’ cross-motion for summary judgment is ALLOWED in part and DENIED in part. Further, the Olsons’ motion to dismiss Sternberg’s counterclaim is ALLOWED as to Count III but DENIED in all other respects. Finally, Sternberg’s motion to disqualify Attorney Kevin P. Kerr from further representation of the Olsons is DENIED.
BACKGROUND
In February of 1994, plaintiff Linda Sternberg filed action No. 94-0675-B (“the original action”) against defendants John and Patricia Kveraga (the Kveragas) to collect attorneys fees allegedly owed her in connection with her representation of the Kveragas in Juvenile Court proceedings concerning Patricia’s daughter by a previous marriage. The Kveragas owned real estate located in East Wakefield, New Hampshire (the property) which had been placed in a nominee trust in April 1992, when the Kveragas conveyed it to Robert M. Olson and Joanne Kveraga-Olson (the Olsons) as Trustees of the Swim Belleau Really Trust (the Nominee Trust). Sternberg’s complaint in the original action alleged breach of contract and fraudulent conveyance against the Kveragas and named the Olsons in their capacities as trustees of the Nominee Trust as reach and apply defendants.
The Olsons were served in hand as Trustees of the Nominee Trust on February 16, 1994 with copies of the summons and complaint, as well as interrogatories and requests for production of documents. It should be noted that they were served as reach and apply defendants only. However, the Olsons never entered an appearance as Trustees of the Nominee Trust and never responded to either the complaint or the discovery requests. John Kveraga defended the original action and asserted counterclaims against Sternberg for breach of contract, fraud, conversion, violation of Chapter 93A, and abuse of process. In the course of discovery, John Kveraga disclosed that 100% of the beneficial interest in the Swim Belleau Realty Trust was held by the Olsons as Trustees of the Kveraga Family Trust, another trust in which the Kveragas and their daughter Collette held the beneficial interest.[5]
Accordingly, on April 12, 1995, this Court (King, J.) allowed Sternberg to amend her complaint to add the Olsons in their capacity as Trustees of the Kveraga Family Trust (the Family Trust). However, the Olsons were never served with process in their capacities as Trustees of the Family Trust and never received a copy of the amended complaint. Nonetheless, on June 6, 1995, the Olsons were defaulted on the amended complaint as both Trustees of the Nominee Trust and as Trustees of the Family Trust. In addition, Patricia Kveraga was defaulted as to the amended complaint, leaving only defendant John Kveraga to go to trial. After a two-day trial, the jury ruled in favor of Stern-berg on the amended complaint and dismissed the counterclaims against her. The issues of fraudulent conveyance and reach and apply were reserved for the judge, who heard the parties’ oral arguments.
Thereafter, a hearing for the assessment of damages was initially scheduled for October 18, 1995 but was rescheduled for November 8, 1995 to ensure that the Olsons were notified. On October 18, this Court (Botsford, J.) issued a preliminary injunction preventing the Olsons from selling, conveying or encumbering the trust property. Although the Olsons received notice at their residence of the assessment of damages hearing, they failed to appear for the hearing.
Thus, on December 19, 1995, this Court (Botsford, J.) entered judgment against the Kveragas in favor of Sternberg in the amount of $44,282.57, exclusive of costs and postjudgment interest, and further ordered that if said amount was not paid in thirty days then the Olsons as Trustees were to sell the property by April 17, 1996 to satisfy the judgment. The fact that the Olsons had never been served with the amended complaint as Trustees of the Family Trust was not brought to Judge Botsford’s attention at this hearing.
The Olsons first realized in January of 1996 that the complaint had been amended to name them as Trustees of the Family Trust and that the default judgment purported to lie against them in that capacity. On January 19, 1996, Sternberg notified the Olsons that the Kveragas had not paid the judgment and requested information concerning the sale of the property, such as the listing with a realtor and the asking price. However, the Olsons did not respond. Meanwhile, by order of the Suffolk County Probate and Family Court dated January 29, 1996, the Kveragas were divorced and granted joint legal custody of their minor child, Collette.
Following a second letter by Sternberg to the Olsons on February 22 seeking their cooperation in the sale of the property, the Olsons responded by letter on March 5, asserting that the December 19, 1995 Judgment and Order was faulty and that a declaratory judgment was necessary to determine the parties’ rights and obligations. However, the Olsons did not raise their arguments concerning the invalidity of the judgment to Judge Botsford at this time. On April 3, 1996, this Court heard Sternberg’s emergency motion for sanctions and to compel the Olsons to comply with the judgment, and directed that a contempt hearing be held on April 19 if the Olsons had not complied with the judgment as of that date. Thus, on April 11, the Olsons sold the property to one Beverly Jagodynski for a price of $30,000 and deposited the proceeds, which after closing costs and back taxes totaled $27,783.66, into their client trust fund account with attorney Kevin P. Kerr.
On April 18th, 1996, the day prior to the scheduled contempt hearing, the Olsons filed the present suit, *51 Action No. 96-2085F, seeking to implead the $27,783.66 in proceeds into court, and to obtain a declaratory judgment declaring the parties’ rights and obligations with respect to those proceeds. The Olsons’ complaint asserts that as Trustees, they are subject to conflicting obligations by virtue of the fact that under the Kveraga Family Trust instrument, minor Collette Kveraga, who was never made a party to the original action, has a claim to said proceeds, while at the same time, they are under a Court order to pay the proceeds over to Sternberg. In addition, the Olsons contend that the judgment in the original action is not binding upon them because they were never served as Trustees of the Family Trust, such that the Court lacked personal jurisdiction over them in that capacity. In response, Sternberg filed a counterclaim against the Olsons both individually and as Trustees of the Nominee and Family Trusts, filed a cross-claim against John Kveraga and impleaded Beverly Jagodynski, alleging breach of the covenant of good faith and fair dealing, abuse of process, violation of chapter 93A, fraudulent conveyance and frivolous and bad faith in pleading against each of these parties.
Sternberg now moves this Court for summary judgment on the declaratory judgment complaint on the ground that the Olsons waived the issues of defective process and lack of jurisdiction and on the further ground of res judicata. The Olsons have filed a cross-motion for summary judgment seeking a declaration that the Family Trust is terminated and an order that the proceeds from the sale of the trust properly be paid to Collette Kveraga in accordance with the terms of the trust. In addition, the Olsons now move this Court to dismiss Sternberg’s counterclaim against them pursuant to Mass.R.Civ.P. 12(b). Finally, Sternberg moves to have Attorney Kevin P. Kerr disqualified as counsel for the Olsons.
DISCUSSION
I. CROSS MOTIONS FOR SUMMARY JUDGMENT
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
A. Validity of the Original Judgment and Order
The Olsons first seek a declaratory judgment that this Court’s December 15, 1995 Judgment and Order in Action No. 94-0675B is void insofar as it directed them as Trustees of the Family Trust to sell the trust property to satisfy Sternberg’s judgment against the Kveragas. They contend that the Judgment and Order, although binding on them as Trustees of the Nominee Trust cannot bind them as Trustees of the Family Trust since they were never served with process in that capacity. While these arguments may appear to be highly technical, this Court must consider them carefully in light of the allegations that the interests of Patricia and Collette Kveraga in the trust property were not properly protected in the original action.
The Olsons further claim that even if the judgment binds them as Trustees of the Family Trust, it cannot bind Collette Kveraga as a beneficiary of the Family Trust because her interests were not represented in the original action by either the Olsons or her parents. Sternberg argues, however, that she is entitled to judgment as a matter of law on the declaratory judgment complaint because the Olsons waived the defenses of improper service and lack of jurisdiction in Action No. 94-0675B and therefore cannot now collaterally attack the court’s Judgment and Order in that case. It is well established that a judgment obtained by default without any trial is res judicata so long as the defendant was duly served and thus could have tried various issues and raised various defenses if he chose to appear. MacEachern v. SS. White Dental Manuf. Co., 304 Mass. 419, 421 (1939). However, a judgment by default is a nullity against a defendant never served with process. F.H. Hill Co. Inc. v. Doe, 286 Mass. 187, 190 (1934). See also Harns v. Sarnella, 400 Mass. 392, 395 (1987). Although the Olsons were properly served in their capacity as Trustees of the Nominee Trust, they contend that the default judgment against them in the original action is nonetheless invalid insofar as they were never separately served in their capacity as Trustees of the Family Trust.
It is well established that a trustee must be served with process separately for each different capacity in which he is being sued. See Cochrane v. Forbes, supra at 255; New England Oil Refining Co. v. Canada Mexico Oil Co., Ltd., 274 Mass. 191, 198 (1930). Thus, where trustees were named as defendants in their official capacities and the complaint was amended to state a claim against the trustees as individuals, the trustees as individuals could not be made parties to the amended complaint without separate service of process. Cochrane v. Forbes, supra at 255; New England Oil Refining Co. v. Canada Mexico Oil Co., Ltd., supra at 198. Compare Golf v. MacDonald, 333 Mass. 146, 150 (1955) (holding that a judgment in a suit in which a trustee was acting individually would not bind him acting in his capacity as trustee). Moreover, in the absence of separate service upon the trustees in their *52 capacity as individuals, the court was without jurisdiction to determine those issues affecting them as individuals. Cochrane v. Forbes, supra at 256.
Accordingly, in the present case, service upon the Olsons as Trustees of the Nominee Trust did not constitute service of process on them as Trustees of the Family Trust. A summons is a formal order by the court to appear and defend a lawsuit. Although the Olsons had notice from the original summons that they were being sued as reach and apply defendants as Trustees of the Nominee Trust, this in no way apprised them that they were also required to defend the present action as Trustees of the Family Trust. This is significant because as Trustees of the Nominee Trust, the Olsons had no power to take any action with respect to the trust property unless so directed by the beneficiaries. As Trustees of the Family Trust, however, the Olsons had the power to affect the trust property and thus, the rights of John, Patricia and Collette Kveraga with respect thereto.
Finally, it should be noted that because the Olsons never entered any appearance in the original action, they did not receive actual notice through the course of participation in the suit that they were responsible for protecting the interests of John, Patricia and Collette Kveraga as beneficiaries of the Family Trust. Thus, because they were never served as Trustees of the Family Trust, the Olsons were never before the court in that capacity and could not properly be defaulted in that capacity, although they were properly defaulted as Trustees of the Nominee Trust. Accordingly, the default judgment and order entered after the assessment of damages hearing are void for lack of process as to the Olsons in their capacity as Trustees of the Family Trust.
Nonetheless, Sternberg contends that the Olsons waived any defects in service of process and jurisdiction. Pursuant to Mass.R.Civ.P. 12(h)(1), the defenses of insufficiency of service of process and lack of personal jurisdiction are waived by failure to raise them in either a motion to dismiss filed under the rule or in the answer. In the present case, however, the Olsons never filed any motions or responsive pleadings but rather, allowed a default judgment to be entered against them. Because they never entered an appearance in the original action in their capacities as Trustees of the Family Trust, they did not waive the defenses of deficient process and lack of jurisdiction. Compare Smith v. Arnold, 4 Mass.App.Ct. 614, 616 (1976) (holding that where the defendant filed a special appearance to challenge the court’s jurisdiction over his person, he was bound by the court’s determination and could not relitigate it). Accordingly, the Judgment and Order of December 15, 1995 was void insofar as it ordered the Olsons as Trustees of the Family Trust to direct the Olsons as Trustees of the Nominee Trust to sell the trust property to pay the judgment against the Kveragas in Sternberg’s favor.[6]
B. Collette Kveraga’s Right to the Trust Proceeds
The Olsons further contend that the judgment in the original action cannot bind Collette Kveraga as a beneficiary of the Family Trust because she was not made a party to that suit. They thus seek a declaratory judgment that because the Family Trust has terminated, Collette Kveraga is entitled to the $27,783.66 in proceeds from the sale of the property pursuant to paragraph 8 of the trust instrument, which provides:
Upon termination of the trust, ownership of the trust estate shall automatically vest in the Settlors as joint tenants, except as provided hereinafter. If at the time of termination any civil or criminal court case, any administrative proceeding or any attachment of property is pending against either or both Settlors, or any judgment for money damages is outstanding against either or both Settlors then ownership of the trust estate is to vest automatically in the Settlors’ daughter and beneficiaiy Collette C. Kveraga.
Sternberg, however, contends that the issue of whether she as a creditor of the Kveragas is entitled to reach the trust property despite paragraph 8 of the trust instrument was fully and fairly decided in the original action, such that Collette Kveraga is precluded by the doctrine of res judicata from relitigating that issue through the present declaratory judgment action.
The doctrine of collateral estoppel, or issue preclusion, bars a parly or its privy from relitigating an issue of fact or law that a court of competent jurisdiction has already decided in another proceeding. Giedrewicz v. Donovon, 277 Mass. 563, 565 (1931); Ratner v. Rockwood Sprinkler Co., 340 Mass. 773, 775 (1960); Martin v.Ring, 401 Mass. 59, 61 (1987); Boyd v. Jamaica Plain Co-op Bank, 7 Mass.App.Ct. 153, 159 (1979). The operation of collateral estoppel has several prerequisites: the issue in the two suits must be identical, the issue must have been actually litigated in the first suit and must have been necessary to the decision in that suit, and the party to be estopped must have been a party or in privity with a party to the first litigation. Giedrewicz v. Donovon, supra at 565; Massachusetts Prop. Ins. Underwriting v. Norrington, 395 Mass. 751, 753 (1985); Martin v. Ring, supra at 61-62; Boyd v. Jamaica Plain Co-op Bank, supra at 159-160. In the present case, it appears from the December 15, 1996 Memorandum of Decision and Order that the court in the original action considered Collette’s rights in the property under paragraph 8 of the Trust instrument but concluded that this did not prevent creditors such as Sternberg from reaching the trust property.[7] Moreover, it is undisputed that the court’s resolution of this issue was necessary to its judgment and order in the original action.
However, the doctrine of collateral estoppel operates to bind a nonparty only where that person had a *53 full and fair opportunity to litigate the particular issue, either by having her interests represented by a party to the prior litigation, or by effectively exercising control over the litigation. Boyd v. Jamaica Plain Co-op Bank, supra at 158-159; Mongeau v. Boutelle, 10 Mass.App.Ct. 246, 250 (1980). There must be a sufficient legal identity between the interest of the person allegedly represented and that of the prior litigant in order for the claim of the former to be precluded. Rudow v. Fogel, 376 Mass. 587, 589 (1978); Mongeau v. Boutelle, supra at 250. Thus, the critical issue for this Court is whether Collette Kveraga, through the representation of either her parents or the Olsons as Trustees of the Nominee Trust, had a full and fair opportunity to have her interest in the trust heard in the original action.
First, it is clear that the parent-child relationship cannot of itself form the basis for judgment or issue preclusion; rather, there must be an independent finding of legal identity between the parties. Rudow v. Fogel, supra at 589. This rule serves to safeguard the integrity of representative functions. Id. Where a father claimed the existence of a trust in his son’s behalf as a defense to an action for ejection from certain land, there was no legal identity between the father litigating in his own behalf in that case and the interests of his son in a later suit seeking a judgment that the land was held in trust for his benefit. Id. Accordingly, the son was not barred from bringing the second action by a finding, in the suit brought directly against his father, that insufficient facts existed to establish a trust. Id. Similarly, in the present case, there is an insufficient legal identity between John and/or Patricia Kveraga defending themselves against Sternberg’s claim for legal fees and Collette Kveraga’s interests in having the proceeds from the sale of the property distributed to her rather than to her parents’ creditors. Thus, this Court concludes that Collette’s interests were not adequately represented in the original action by her parents so as to preclude her, through either the Trustees or her mother as legal guardian, from relitigating the issue of her rights to the trust property or proceeds therefrom in the present declaratory judgment action.
With respect to representation by the Olsons in the original action, it is well established that a trustee with fiduciary responsibilities may represent the interests of the beneficiaries' of the trust for the purposes of judgment preclusion. Roche v. Roche, 22 Mass.App.Ct. 306, 309 (1986). Thus, a trust beneficiary not party to an action may be bound from prosecuting a second action on the same claim where her interests in the claims of the trust against third parties were identical to those of the other beneficiaries of the same trust, who were represented by a trustee or guardian ad litem in prior litigation. Dwight v. Dwight, 371 Mass. 424, 427 (1976). The ordinary rule is that in relations between a trust and the outside world, where internal administration of the trust is not involved and there is no conflict of interest either between the trustee and the beneficiaries or among the beneficiaries themselves, the trustee represents the interests of all beneficiaries of the trust estate. Guilda v. Second National Bank, 323 Mass. 100, 102-03 (1948); New England Peabody Home for Crippled Children v. Page, 325 Mass. 663, 667 (1950); Claflin, petitioner, 336 Mass. 578, 581 (1958).
In the present case, the Olsons litigated the original action only in their capacity as Trustees of the Nominee Trust. They thus represented the sole beneficiary of that trust, themselves as Trustees of the Family Trust, the beneficiaries of which are John, Patricia and Collette Kveraga. Sternberg has failed to produce any Rule 56 materials demonstrating that Collette’s interest in the trust was adequately represented, while the defendants have introduced affidavits from Robert Olson and Patricia Kveraga explicitly stating that the Olsons did not represent Collette’s interests in the original action. Moreover, in light of the circumstances, John and Patricia’s divorce and the alleged fraudulent sale of the property to John’s girlfriend, this Court cannot conclude as a matter of law that Collette’s interests were adequately protected, such that the Olsons as Trustees of the Kveraga Family Trust and/or Patricia Kveraga as Collette’s guardian are precluded by the doctrine of collateral estoppel from litigating the present declaratory judgment action. Accordingly, Sternberg’s motion for summary judgment must be denied.
Finally, insofar as there are genuine issues of material fact with respect to the circumstances, if any, under which the Kveraga Family Trust terminated, the Olsons are not entitled to summary judgment with respect to a declaration by this Court that Collette Kveraga, rather than Sternberg as creditor, is entitled to the proceeds from the sale of the trust property.
II. OLSONS’ MOTION TO DISMISS STERNBERG’S COUNTERCLAIMS
A. Service of Process Issues
The Olsons first move to dismiss Sternberg’s counterclaims pursuant to Rules 12(b)(2), 12(b)(4) and 12(b)(5) on the ground that after amending her complaint to state counterclaims against them as individuals, Sternberg failed to make proper service upon them in that capacity. The Olsons clearly brought the present declaratory judgment complaint in their capacities as Trustees of the Nominee and Family Trusts, and not as individuals. However, Sternberg’s counterclaim prays for relief against them both “individually and in their fiduciary capacities on all Counts.” It is well established that trustees sued in their official capacity are not the same persons in legal intendment as when sued in their private capacity as individuals. Cochrane v. Forbes, supra at 255-56. Compare Eaton v. Walker, 244 Mass. 23, 31 (1923) (stating that a defendant sued as an executor is a different person in *54 legal intendment as that defendant sued as an individual). Thus, where trustees were named as defendants in a bill of equity in their official capacities and the bill was amended to state a claim against the trustees as individuals, the trustees as individuals could not be made parties to the amended bill without separate service of process. Cochrane v. Forbes, supra at 255; New England Oil Refining Co. v. Canada Mexico Oil Co., Ltd., supra at 198. Moreover, in the absence of separate service upon the trustees in their capacity as individuals, the court was without jurisdiction to determine those issues affecting them as individuals. Cochrane v. Forbes, supra at 256.
Thus, at the time the Olsons’ motion to dismiss was filed, the proper steps had not been taken to make them parties to Sternberg’s counterclaims as individuals. Nonetheless, it appears from a summons contained in the case file that on July 12, 1996, a deputy sheriff served “Joanne Kveraga Olson and Robert Olson, Individually” with a third parly complaint by leaving it at their last and usual place of abode. Accordingly, the Olsons’ claims of lack of personal jurisdiction, insufficient process and insufficient service of process are moot, and their motion to dismiss on those grounds must be denied.
B. Failure to State a Claim
The Olsons further move this Court to dismiss Sternberg’s counterclaim pursuant to Mass.R.Civ.P. 12(b)(6) on the ground that they cannot be held individually liable under any of the five counts for their conduct as trustees. When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted, the court must accept as true the well pleaded factual allegations of the complaint as well as any inference which can be drawn therefrom in the plaintiffs favor. Nader v. Citron, 372 Mass. 96, 98 (1977); Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991). A Rule 12(b)(6) motion should not be allowed unless it is shown beyond any doubt that the plaintiff is entitled to no relief under any state if facts which could be proved in support of the claim. Spinner v. Nutt, 417 Mass. 549, 550 (1994); Romano v. Sacknoff, 4 Mass.App.Ct. 862, 962 (1976).
Count I of Sternberg’s counterclaim alleges that the Olsons were subject to an implied covenant of good faith and fair dealing in complying with the terms of this Court’s December 19, 1995 Order that the Olsons as Trustees sell the trust property in order to satisfy the $44,282.57 judgment against the Kveragas, and breached said covenant by selling the property for less than fair value. Count II alleges that the Olsons filed the present declaratory judgment action for the sole purpose of hindering Sternberg’s collection of the judgment against the Kveragas and are thus liable for abuse of process.
Count III of the counterclaim alleges that the Olsons are in trade or business as a result of this Court’s Order and committed an unfair or deceptive practice in violation of Chapter 93A by selling the property for well below its true value. In addition, Count IV alleges that the Olsons’ sale of the property to Beverly Jagodynski on April 11, 1996 was a fraudulent transfer. Finally, Count V alleges that the Olsons’ commencement of the present suit for declaratory judgment constitutes a frivolous action and bad faith pleading.
Thp trend in Massachusetts is to view the trustees of a nominee trust as agents for the principals’ convenience rather than as trustees in the more traditional fiduciary sense. Apahouser Lock & Security Corporation v. Carvelli, 26 Mass.App.Ct. 385, 388, rev. den., 403 Mass. 1104 (1988). Thus, the courts have concluded that the protection from individual liability afforded trustees by G.L.c. 203, §14A does not encompass the trustees of nominee and business trusts.[8] First Eastern Bank, N.A. v. Jones, 413 Mass. 654, 661 (1992); Apahouser Lock & Security Corporation v. Carvelli, supra at 388; North Shore Protective Patrol & Detective Agency, Inc. v. Baldwin, 1991 Mass. App. Div. 61, 64.
Accordingly, under common law principles of agency, the trustees of a nominee trust may be held individually liable for torts committed in the administration of a trust, whether or not they are personally at fault. Larson v. Sylvester, 282 Mass. 352, 357-58 (1933); First Eastern Bank, N.A. v. Jones, supra at 659. Sternberg’s counterclaim therefore states a cause of action for breach of fiduciary duty, abuse of process, fraudulent conveyance and frivolous and bad faith pleading against the Olsons individually as well as in their capacities as Trustees of the Nominee and Family Trusts.
With respect to the Chapter 93A count, the Olsons contend that their conduct as trustees for the private benefit of a family trust holding land for recreational purposes did not occur in a consumer or business context. Sternberg, however, relies on Chapter 93A, section 1(b) which includes in its definition of trade and commerce the offering for sale of real property. See G.L.c. 93A, § 1(b) (1994). It is well established, however, that Chapter 93A does not apply to transactions that take place on a private, nonprofessional basis rather than in the ordinary course of trade or business. Lantner v. Carson, 374 Mass. 606, 608 (1978).
Thus, Chapter 93A does not apply to the sale of a residence by a private homeowner to a private seller. Id. at 610. Moreover, Chapter 93A does not apply to the actions of an administrator settling a deceased’s estate, which are strictly private in nature. Gannett v. Lowell, 16 Mass.App.Ct. 325, 328 (1987). Finally, the court has held that the private actions of a trustee of a family trust established to hold a majority of the voting shares of a closely held corporation were not subject to Chapter 93A. Edinburg v. Cavers, 22 *55 Mass.App.Ct. 212, 229, rev. den., 398 Mass. 1101 (1986).
The present case involves the Olsons’ conduct as trustees of nominee and family trusts which hold a parcel of recreational property in trust for the personal use of the Kveraga family. Although the trust property is not the Kveraga’s primary residence and thus may not be the only piece of real estate owned by the Kveragas, neither can they be deemed to be engaged in the business of real estate. The Trustees’ sale of the property was undertaken on a private, nonprofessional basis and therefore is not subject to Chapter 93A.[9] Accordingly, Count III of Sternberg’s counterclaim fails to state a claim and must be dismissed against the Olsons in both their individual capacities and as trustees.
III. MOTION TO DISQUALIFY COUNSEL
Finally, Sternberg moves to disqualify Attorney Kevin P. Kerr from further representation of the Olsons in the present suit. Kerr is the attorney who, at the Olsons’ request, drafted both the Swim Belleau Trust and Kveraga Family Trust instruments. In addition, Kerr negotiated the sale of the trust property to Beverly Jagodynski and drafted the closing documents on behalf of the Olsons as Trustees. Sternberg contends that Kerr should be disqualified from representing the Olsons in the present declaratory judgment because he will be called as a witness to testify both as to the intended terms of the trust and the circumstances surrounding the negotiation and terms of the sale of the trust property.
Disciplinary Rule 5-102(A) provides:
If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5-101(B), (1) through (4). DR 5-102(A), 359 Mass. 796, 814 (1972).
Disciplinary Rule 5-101(B) states:
A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:
(1) If the testimony will relate solely to an uncontested matter.
(2) If the testimony will relate solely to a matter of formalify and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.
(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case. DR 5-101(B).
The purpose of Rule 5-102(A) is to protect the right of the client to his attorney’s testimony, which may be discounted by the jury if the attorney also appears in the role of counsel. Borman v. Borman, 378 Mass. 775, 786 (1979); Byington v. City of Boston, 37 Mass.App.Ct. 907, 908 (1994). Disqualification under this rule is not required in every situation in which counsel could give testimony in support of his client on other than formal or uncontested matters; rather, the rule requires disqualification where a lawyer is likely to withhold crucial testimony from his client because he prefers to continue as counsel. Borman v. Borman, supra at 790; Byrnes v. Jamitowski, 29 Mass.App.Ct. 107, 109 (1990).
The courts have recognized that application of DR 5-102(A) may have harsh consequences for the client, denying him the right to counsel of his choice and temporarily disabling him in his effort to prosecute a claim or mount a defense. Borman v. Borman, supra at 787. Accordingly, courts should be wary of the use of disqualification as a pretrial litigation weapon. Id.; Byrnes v. Jamitowski, supra at 108. In light of the high costs of disqualification on litigants and the court system, a trial judge should defer to the best judgment of counsel and his client in determining whether counsel ought to testify, where there is a dispute between the parties on that issue. Borman v. Borman, supra at 790; Gorovitz v. Planning Board of Nantucket, 394 Mass. 246, 250 (1985); Serody v. Serody, 19 Mass.App.Ct. 411, 413 (1985).
“When a lawyer, exercising his best judgment, determines that his employment will not bring him into conflict with the code, disqualification may occur only if the trial court determines that his continued participation as counsel taints the legal system or the trial of the cause before it.” Borman v. Borman, supra at 788; Gorovitz v. Planning Board of Nantucket, supra at 250. Such would be the case when a present intention to forgo the testimony of counsel appears obviously contrary to the client’s interests, e.g., his hope of success in the action. Borman v. Borman, supra at 791; Mendel Kern, Inc. v. Workshop, Inc., 400 Mass. 277, 281 (1987). In addition, where the outcome of the case is likely to turn on the lawyer’s credibility as witness or where the testimony is likely to be prejudicial to the client, judicial intervention to disqualify counsel is appropriate. Serody v. Serody, supra at 413. The need for disqualification is greatest where the lawyer is most intimately involved in the events at issue; nonetheless, sizing up the potential for and degree of prejudice is a matter for the discretion of the *56 trial judge. Id. at 415. If the proceedings are still in the discovery stage and the judge is unable to determine whether the client will need counsel’s testimony, the determination may be deferred until more is known. Borman v. Borman, supra at 791; Byrnes v. Jamitowski, supra at 110.
Finally, where opposing counsel seeks to call the attorney as a witness, Disciplinary Rule 5-102(B) applies, which states:
If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client. DR 5-102(B).
Thus, a party who calls opposing counsel as a witness generally has no right to require him to withdraw as counsel. Borman v. Borman, supra at 792, quoting Kendall v. Atkins, 374 Mass. 320, 324 (1978).
In the present case, Sternberg contends that Kerr should be disqualified because he will be called as a witness to testify both as to the intended terms of the Kveraga Family Trust and the circumstances surrounding the negotiation and terms of the sale of the trust property. On the present record, however, this Court is incapable of determining whether Kerr ought to be a witness on the Olsons’ behalf or whether there exist equally efficacious ways of putting the gist of any expected testimony before a jury. In any event, the court would be obligated to defer to Kerr and the Olsons’judgment on such a matter, given the complete absence of any facts suggesting that Kerr’s continued participation as counsel taints the legal system or the trial of the present matter. Finally, insofar as Stern-berg intends to call Kerr as a witness, it is clear that DR 5-102 was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him. Accordingly, at this stage of the litigation, the motion to disqualify Kerr from further representation of the Olsons must be denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that Sternberg’s motion for summary judgment be DENIED. It is ADJUDGED and ORDERED that a declaration enter DECLARING that the December 19, 1995 Judgment and Order in Action No. 94-0675B is void as to reach and apply defendants the Olsons in their capacity as Trustees of the Kveraga Family Trust; however, it is further ORDERED that the Olsons’ cross-motion for summary judgment be DENIED in all other respects.
It is further ORDERED that the Olsons’ motion to dismiss the counterclaims against them in their individual capacities be ALLOWED as to Count III and DENIED as to all other Counts.
Finally, it is hereby ORDERED that Sternberg’s motion to disqualify Attorney Kevin P. Kerr as counsel be DENIED.

 The purpose of the Kveraga Family Trust is to provide recreation and other personal use of the trust estate for the Kveraga family and to protect it from the settlors’ creditors.
The purpose of the Swim Belleau Realty Trust is to hold record title to the property as a nominee realty trust.

 It should be emphasized that this Court’s ruling concerns only the validity of the judgment as to the Olsons as reach and apply defendants and in no way affects the validity of the judgment with respect to the Kveragas’ underlying liability to Sternberg.

 For purposes of the present motion, this Court does not address the Olsons’ claim that the court in the original action relied on inappropriate case law in ruling that the Kveragas’ creditors could reach the trust property. It is well established that judgments, even incorrect ones, are binding upon the parties and their representatives. Wright Mach. Corp. v. Seaman-Andwall Corp., 364 Mass. 683, 690-91 (1974); Morganelli v. Building Inspector of Taunton, 7 Mass.App.Ct. 475, 487 (1979). Thus, this Court is concerned only with the parties’ arguments concerning whether Collette Kveraga was adequately represented in that action so as to preclude her from relitigating the issue.

 Chapter 203, section 14A provides that a trustee is personally liable on contracts entered into in a fiduciary capacity only if he failed to reveal his representative capacity and identify the trust estate in the contract, and is personally liable for torts committed in the administration of the trust estate only if he was personally at fault. G.L.c. 203, § 14A (1981).

 This is true even though the sale was conducted under a Court Order.

 Patricia C. Kveraga.

 Robert Olson, Trustees of the Swim Belleau Realty Trust and Kveraga Family Trust.